Ragsdale and Mabry v. Gossett.

GEORGE H. RAGSDALE and LAURA E. MABRY, by next friend, v. V. F. GOSSETT et als.

1. PRINCIPAL AND SURETY. *Release of surety does not release maker.* The release of a surety, although the co-maker of a note, cannot be set up in equity as a release of the principal.

2. CHANCERY PRACTICE AND PLEADINGS. *Judgment by confession.* Upon bill filed by a judgment creditor to reach property of his debtor, leave to the latter was properly refused to exhibit a cross-bill to set up the defense of failure of consideration of the note, on which the judgment was rendered, since the rendition of the judgment, the record showing

that the judgment was rendered by confession after the making and withdrawal of the same defense at law, and no explanation of the fact, or of the subsequent delays being given.

3. HUSBAND AND WIFE. *Note in ordinary form will not bind separate estate.* A note of husband and wife in the ordinary form, saying nothing about the separate estate of the wife, is not a charge on that estate, nor is parol evidence admissible to prove that the note was intended to be a charge upon the estate.

4. CHANCERY PRACTICE. *Jury. Issues must be material.* It is the duty of the party applying for a jury in the Chancery Court to submit a proper issue ; and if the issue be immaterial, neither the Chancellor nor this court will be bound by the verdict, and the cause will be decided without a repleader.

---

FROM KNOX.

---

Appeal from the Chancery Court at Knoxville. A. CALDWELL, Sp. Ch.

WASHBURN, HENDERSON & JOUROLMON for complainants.

T. S. WEBB and H. H. TAYLOR for defendants.

COOPER, J., delivered the opinion of the court.

On the 6th of October, 1874, the defendants, E. Kirby Smith and Bushrod R. Johnson, recovered a judgment at law against their co-defendant, Joseph A. Mabry, for $347.97. On the 19th of February, 1875, the defendant, V. F. Gossett, recovered another judgment at law, by confession, against the said Mabry, for $792.75. Executions, issued on these judgments, were levied on certain personal chattels as the property of Mabry, under which a sale was advertised to be had on the 3d of April, 1875. On the 2d of April, 1875, the original bill in this cause was filed by Laura

E. Mabry, wife of the said Joseph A. Mabry, and George H. Ragsdale, as her trustee and next friend, claiming the property as belonging to her, and enjoining the sale. The substance of the bill is that Laura E. was the owner of a separate estate, of which complainant Ragsdale was trustee by appointment of court; that complainant, Laura E., borrowed from M. W. McIntosh $2,000, and from A. J. Johnson $350, on the faith and charge of her separate property; that on the 5th of September, 1872, the personal chattels of the husband, Joseph A. Mabry, were sold under executions against him, and bought by Ragsdale as trustee with part of the money so borrowed; and that the chattels in controversy constituted a portion of those thus bought. The defendants, the judgment-creditors, answered this bill, denying that the money was borrowed as alleged, and insisting that it was in fact borrowed by the husband; denying, moreover, that any part of the money borrowed was used in purchasing the chattels at the execution sale; and averring that the purchase was by the husband, and the title apparently vested in Ragsdale as trustee, with a view to hinder and delay the husband's creditors. The answers of the creditors were also filed as cross-bills, in view of the alleged fraudulent device, to subject the property to the satisfaction of the judgments against the husband. The husband, wife and trustee answered these cross-bills, but not under oath, the oath being waived; proof was taken, and the cause tried by a jury, upon issue joined, and a verdict and decree thereon rendered in favor of the original complainants, the wife,

and her trustee, and the defendents have appealed in error.

Pending the litigation, on the 27th of September, 1876, Joseph A. Mabry presented to the court a cross-bill against V. F. Gossett and others, and asked leave to file the same. The substance of this bill was that Gossett's judgment was based upon a note, executed on the 8th of March, 1872, by Joseph A. Mabry as principal, and G. W. Mabry and L. C. Houk as his sureties; that the consideration of this note consisted of the anticipated commissions of Gossett, as sheriff, on the sale of certain property of Mabry, then in his possession under execution against Mabry levied thereon; that the note "under an arrangement between the holders of the judgments, said Mabry and said Gossett," was executed to said Gossett "in settlement of his commissions and costs upon said expected sales"; that, since the rendition of judgment thereon, to-wit, on the 27th of April, 1876, the property was sold, not by Gossett, but by a deputy of his successor in office, who has collected the commissions and costs, and, therefore, there has been a failure of consideration of which Mabry could not have availed himself in the suit at law. The bill further alleged that, pending the suit on said note which was instituted against Mabry and Houk, the plaintiff dismissed the suit as against Houk, and executed to him, for a valuable consideration, a formal release, knowledge of which release has only recently been obtained by complainant. And the cross-bill insisted that the release of Houk operated a release of complainant Mabry. The Chan-

Ragsdale and Mabry *v.* Gossett.

cellor allowed the bill to be filed upon the last ground, but refused permission to file it upon other grounds. Afterwards, upon demurrer, the Chancellor dismissed this cross-bill, and Mabry appealed.

It is too clear for argument, and is now conceded, that the release of a surety, although the co-maker of a promissory note, cannot be set up in a court of equity as a release of the principal. In no possible aspect could such a release injuriously affect the principal, whose legal obligation is to indemnify his surety from all loss by reason of his suretyship. The Chancellor ought to have refused the leave asked to file the bill on this ground, and was right in sustaining the demurrer subsequently put in.

The failure of consideration was a good defense at law. Code, sec. 1806. And it was not necessary to wait until an actual sale of the property to set it up. The termination of the execution lien or Gossett's right to sell would have been sufficient. The bill shows that the note was given on the 8th of March, 1872, and Gossett's answer, which is expressly referred to by Mabry's cross-bill for a description of the judgment, shows that the recovery was had on the 19th of February, 1875. It does not appear that the defense relied on, if available, might not have been made at law. Nor is any excuse offered for the delay of five months after the time when the bill concedes that the defense fully accrued. Under the circumstances, the law requires good cause to be shown for any delay, and such a statement of facts as will exclude any conclusion adverse to the right sought to be set up.

Moreover, the judgment itself, which constituted a part of the original record, shows upon its face that the defense relied on was made, and afterwards withdrawn, and that the judgment rendered was by confession of Mabry. The Chancellor was right in refusing leave to file the cross-bill for this cause.

The complainants in the original bill demanded a jury, and tendered issues on which to try the matters in controversy between them and the judgment creditors. The trial before the jury seems to have turned, and the argument before this court has been almost entirely rested upon the question of the power of a married woman to charge her separate estate. The presiding judge charged the jury thus: "A *feme covert*, the owner of a separate estate, may charge it without the execution of a deed of trust or any paper writing, and whether there is a trustee or not." If his Honor meant to say, that a married woman might, in any case where she was the owner of a separate estate, whether the instrument creating it limited her power of disposition or not, charge that estate orally *ad libitum*, he was clearly in error under the laws and judicial rulings of this State. Our courts have uniformly held that the power of a married woman over her separate estate cannot extend beyond the plain meaning of the deed creating the estate, and the intention of the grantor to be ascertained by a fair construction of the language used. *Morgan* v. *Elam*, 4 Yer., 375, and cases cited in third head note of the new edition. And the act of 1870, ch. 99, even where it enlarges the power of a married woman over her separate es-

Ragsdale and Mabry v. Gossett.

tate, has been held only to extend to cases where the instrument of settlement was silent as to the powers of the *feme*. *Voorhies* v. *Granberry*, 2 Leg. Rep., 46; *Lightfoot* v. *Bass*, 2 Tenn. Ch., 677. If the charge was intended, as probably it was, to be limited to the latter class of cases, it was erroneous in view of the pleadings and the facts before the court. The original bill merely avers that the *feme* complainant " is the owner of a separate estate in equity," as to which the other complainant was appointed trustee for her benefit by the court, the records creating and limiting which estate will be exhibited if required. The answers admit the appointment of complainant Ragsdale as trustee in the place of a former trustee, who had "limited powers and duties," calls for the production of the instruments of settlement and appointment, and denies that either the trustee or beneficiary " has any power to dispose of the trust estate," or that the trust estate is liable for the money borrowed. The instruments of settlement are not produced in evidence, and the appointment of the trustee, which is exhibited, does not disclose either the power of the trustee or beneficiary, nor the time of the settlements, nor even, except in a single instance, that the settlements are to the separate use of the *feme*, and in the excepted instance describes the conveyance as being of " certain property therein mentioned." Upon the pleadings, the burden is upon the original complainants to show the existence of the trust estate, and the power of the *feme* over it. Moreover, the record shows that the money borrowed was secured by the note of the hus-

band and wife in ordinary form, saying nothing about the wife's separate estate. Our authorities are uniform that in order to charge the estate of a married woman with her contracts, there must be an express agreement to create a charge within the power conferred by the settlement. *Cherry* v. *Clements*, 10 Hum., 552; *Litton* v. *Baldwin*, 8 Hum., 209; *Kirby* v. *Miller*, 4 Col., 5; *Shacklett* v. *Polk*, 4 Heis., 115; *Chatterton* v. *Young*, 2 Tenn. Ch., 771. But the notes for the borrowed money, which constituted the contracts between the parties, said nothing about binding the separate estate of the married woman. "No court," says an eminent New York Judge in a famous case, "has ever held or intimated that parol evidence was admissible to prove that the bond or note of a *feme covert* was intended to be a charge upon her estate. To permit this, would be in direct conflict with the rule which excludes all parol evidence offered to explain a written instrument. The intent, to be of any importance, must be a part of the contract; that is, the true meaning of the contract, when justly interpreted, must be that the debt which it creates should be a charge upon the estate." Per Selden, J., in *Yale* v. *Dederer*, 22 N. Y., 450, 456. Our own decisions are in accord, and have uniformly held that all verbal negotiations and stipulations between the parties to a promissory note, as to any other written instrument, anterior to or contemporaneous with its execution, are merged in it, and parol evidence of such stipulations is inadmissible, either at law or in equity. *Campbell* v. *Upshaw*, 7 Hum., 185; *Hancock* v. *Edwards*, 7 Hum., 349;

*Ellis* v. *Hamilton,* 4 Sneed, 512; *Bridges* v. *Robinson,* 2 Tenn. Ch., 720.

For another reason, the decree in this case cannot stand. The facts upon which the original bill is made to rest are denied by the answers of the judgment creditors, and the answer of the wife and trustee to the cross-bills of the creditors is not evidence for them, the oath being waived. The issues raised by the pleadings, between these parties, are:

1. Was the money borrowed from McIntosh and Johnson the separate estate of the wife?

2. If so, was any part of it used in the purchase of the chattels in controversy for her separate use?

3. Was the sale of these chattels, and the purchase as made, intended as a fraudulent device to protect the husband's property from his creditors?

Upon the first two issues, the burden of proof was upon the original complainants. Upon the last, on the creditors, in the event a *prima facie* case was made out against them.

In this state of the pleadings, the original complainants demanded a jury, and tendered, to be tried by them, the following issues:

1. That the chattels in controversy are the property of the wife.

2. That the money that was borrowed to pay for said property was borrowed on the wife's separate estate.

3. That Joseph A. Mabry had no interest in the property.

The direct issue of fraud made by the cross-bill is ignored, as well as the substance of the other issues. The original bill requires the complainants, in order to make out their case, to show that the chattels were bought with certain borrowed money, then being a part of the separate estate of the wife, because obtained on the faith of that estate. The first issue tendered permits the wife to establish title to the property without showing that the borrowed money was used, while the second issue assumes that the money was borrowed to pay for the property, and only raises a contest over the point whether it was borrowed on the separate estate of the wife. Accordingly, on the trial no evidence was offered to show, or even tending to show, that any part of the money borrowed was used in the purchase of the property. The entire case of the original complainants was rested on the testimony of a witness that he bought the property at the execution sale as the agent of Ragsdale, and with money furnished by him. Only one other witness was introduced by the complainants, who merely deposed to the fact that he was present at the sale, and bid for some of the property. The learned Special Chancellor, who presided at the trial, took this view of the issues, for he does not submit to the jury the question whether the money used in the purchase was part of the money borrowed, but assumes throughout his charge that such was the fact. The bill of exceptions shows that it was agreed by the parties that the money obtained from Johnson was received by the husband, and repaid by him, the wife never having bound her separate

estate therefor.   A positive averment of the original
bill, sworn to by Ragsdale, is thus conceded not to
be true.   The bill of exceptions further shows that
the money borrowed from McIntosh was obtained by
the wife on her personal application, for the payment
of which "she verbally agreed her separate estate should
be bound."   But this money, it is also agreed, was
secured by the note of the husband and wife, in the
ordinary form, saying nothing about the wife's separate
estate, one note bearing date April 23d, and the other
May 9th, 1872, whereas the purchase in controversy
was not made until September 5th, 1872.   No evidence
was offered tracing the money into the hands of the
trustee, or connecting the two tranactions of borrowing
and purchase.   It is obvious that the real issues of
the chancery pleadings were not tried, and could not
be tried under the issues tendered.

Treating the verdict of the jury as if the facts
were found by the Chancellor, the decree below must
be reversed.

By the Code, either party to a suit in chancery
may have a jury to try issues of fact in the case, the
finding of the jury having the same force and effect
as on a trial at law.   Code, sections 4465, 4469.
Under these provisions, the verdict of a jury in chan-
cery upon a material issue will have the weight of a
verdict at law, and errors in the proceedings must be
corrected in the same mode.   *James* v. *Brooks*, 6 Heis.,
150;  *Morris* v. *Swaney*, 7 Heis., 591.   But this court
has held, under the original statutes subsequently brought
into the Code, that it is the duty of the party ap-

plying for a jury to submit a proper issue, for otherwise neither the Chancellor nor this court will be bound by the verdict, and the cause may be decided without a repleader. *Gass* v. *Mason*, 4 Sneed, 509. At common law, the plaintiff was entitled to judgment *non obstante veredicto* upon a bad plea, and a repleader was not grantable in favor of the party who makes the first fault in pleading. *Bledsoe* v. *Chouning*, 1 Hum., 85. There are strong reasons for enforcing these rules in equity cases. The complicated nature of such cases, leaves a large opening for professional ingenuity to exert itself in avoiding the real issues, if delay can be gained in this way. And a party is deprived of no right, but only a favor or election, if his case should eventually, for his own fault or wrong, be tried by the court instead of a jury.

Trying this case upon the issues made by the pleadings, and the evidence in the record, it presents no serious difficulty. The burden of proof is on the complainants to show title by purchase with particular funds. The funds designated are not traced into the hands of the wife or her trustee, nor is it shown that any part of the funds was so used. It is not shown that the wife had any separate estate which she was authorized to charge, nor that she did charge it. The original bill says that money was borrowed by the wife "by rendering her separate estate liable, and on the faith and credit thereof." The answer to the cross-bill says the money "was borrowed for her, and for which she is responsible, and for which she intended to charge her separate estate." The bill says that a

Ragsdale and Mabry v. Gossett.

person named became the purchaser of the property as agent of the trustee. The answer to the cross-bill says the property was purchased by that person, "he being the highest and best bidder, who transferred his bid, and the property to respondent Ragsdale as trustee." The bill avers a borrowing from two persons. The proof shows that the fund borrowed from one of these persons went to the hands of the husband, and it does not appear that the other fund was not also received by him. The proof is that on the day of sale of the property, the only two judgment creditors represented, whose agents had gone there to see that the property brought its value, were bought off, and induced to leave, after which the property, consisting of live stock, farm produce, farming implements, furniture, etc., worth from three to four thousand dollars, was sold in block for $400, and left in possession of the judgment debtor as before. The husband was present, holding private consultations with the nominal purchaser. The wife and trustee were not present, and neither of these three persons, husband, wife or trustee, has been called to testify as a witness. Clearly, the original complainants have not sustained the case made by the bill. On the contrary, the complainants in the cross-bill have satisfactorily established the fact that the sale and purchase were merely colorable, and that the chattels remained as before, the property of their debtor, Jos. A. Mabry. They are entitled to a decree accordingly, and to a reference to the master to ascertain instanter what part of the property remains subject to their debts.

---

E. T. Iron Man. Co. *v.* Gaskell.

---

Decree accordingly. The original complainants and Jos. A. Mabry will pay the costs of this court, and of the Chancery Court.