No. 8398.

THE UNION NATIONAL BANK VS. GEORGE LEGENDRE ET ALS.

ON MOTION TO DISMISS.

The order of Appeal making it returnable " on the — day of November, 1881," the appellant appeared in the Court *a qua* on the 15th of that month and, suggesting the omission asked that it be supplied, and that the 21st of November, 1881, be named as the return day. It was so done by the District Judge, and the appellant filed the Transcript in this Court on said 15th of November. *Held*, that the fault was not attributable to the appellant; that the Transcript was filed in good time, and that no citation on appellees was necessary in the premises.

ON THE MERITS.

When two bonded employees of a bank are parties to a joint trespass, resulting in a loss to the Bank, thereby violating the conditions of their respective bonds, three groups of solidary obligations arise, viz : those of each employee and his respective sureties, and that of the two co-trespassers with regard to each other. But the members of these respective groups are not bound *in solido inter sese* beyond the limits of their own group.

Where the relations above indicated result from the facts set forth in the petition, the allegations of solidary liability will be construed with reference thereto.

The discharge of the sureties on one bond would not operate the discharge of the principal or sureties on the other bond.

Payment of the loss by the principal or sureties on one bond would not entitle them to subrogation to the rights of the Bank against the sureties on the other bond.

What rights payment by the principal or sureties on one bond might give them against the principal on the other, as a co-trespasser, need not be determined, because said principal does not appear to have been discharged. The discharge of his sureties, although bound *in solido*, did not discharge such principal.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Percy Roberts* for Plaintiff and Appellant :

1. Any number of causes of action may be cumulated in a single suit, provided they are not contradictory or inconsistent.

2. Where the causes of action set up in a suit are inconsistent, the only remedy of the defendant is to except, and compel the plaintiff to elect which cause of action he will rest on. The defendant cannot elect. C. P. Art. 152 ; 7 N. S. 403 ; 5 L. 440 ; 14 L. 277 ; 28 An. 312.

3. A trespasser has no recourse on his co-trespasser for a repetition of money paid by him on account of his participation in a wrong. The Courts of Louisiana will not lend their aid to enforce any obligation, however equitable as between the parties, which is tainted with immorality. 3 M. 285 ; 3 N. S. 47 ; 2 R. 271 ; 1 An. 69 ; 17 L. 131 ; 1 An. 176 ; 3 An. 203 ; 12 An. 166 ; C. C. 1891, 1892 ; 9 R. 486 ; 5 R. 101 ; 8 An. 468 ; 10 An. 199 ; 13 An. 401 ; 21 An. 110 ; 23 An. 517 ; 27 An. 294 ; 7 Wallace, 542.

4. The recourse which is recognized by the French authors, against a co-trespasser, is a purely personal one, which does not found on subrogation to the creditor's rights, and does not embrace the sureties of the co-trespasser.

5. In order that a payment made by one person to a creditor shall legally subrogate him to the creditor's rights against any other person, it must appear that he was, at the moment of payment, bound "with" or "for" that other, for the same debt. And for two persons to owe the same debt, arising *ex contractu*, and be bound "with" or "for" each other, privity of contract and identity of obligation are absolutely necessary. Demelombe, Contracts, Vol. 4, § 595, *et seq.; 2 An. 942 ; 3 An. 66, 205, 540 ; 26 An. 447 ; 5 R. 204.

6. The only causes of debts are contracts, *quasi contracts*, offenses, *quasi offenses*, and operation of law. Only a man's own act can create an obligation against him. The act of no other binds him, unless that other be his agent.

7. Where the debt which is paid by a debtor *in solido*, concerns only his co-debtor, he is subrogated to the creditor's rights against the creditor as the latter's surety. C. C. 2106; 15 An. 595.

8. No one can claim indemnity for a loss which he has brought on himself by his own fault.

*St. M. Bérault, E. D. White* and *Geo. L. Bright* for Defendants and Appellees :

1. The counsel for the plaintiff labors to show that his action is one *ex contractu*, not *ex delicto*.

Reply. It is unnecessary to give it a name. It is not necessary that it should be one or the other. Such actions partake so much of both, that they can be instituted on the statement of facts from which the action arises.

Cooley on Torts, p. 90, says : "Indeed, in many cases, an action as for a tort, or an action as for a breach of contract, may be brought by the same party on the same state of facts."

We relieve the plaintiff from the necessity of determining whether his action is *ex contractu* or *ex delicto*.

Our defense is, that he has destroyed his cause of action, by the allegation that he has cancelled the bond of Morris and released his securities.

He labors to show that Legendre, the sureties of Legendre, Morris, and the securities of Morris, are not liable *in solido*.

Reply. Solidarity arises from contract, and the plaintiff has alleged, in his petition, that they were his debtors *in solido*. For the purpose of this exception, the allegations of the petition must be taken as true. We quote from his petition. "for which said sum said Morris and the sureties on his bond, as said paying teller, and said George Legendre, and the sureties on his bond, as bookkeeper and clerk, aforesaid, became justly liable to your petitioners *in solido*."

The plaintiff is irremediably bound by that allegation, which makes all the parties his debtors *in solido*.

We say he has destroyed his cause of action by the allegation, "that two of the sureties on the said bond of said Morris, to-wit: John B. Couret and Samuel Boyd, paid to petitioner $10,000 of the said $15,000, in order to effect their release and discharge as sureties on said bond." Having first alleged that all the parties were his debtors *in solido*, he now says that he has discharged two of them.

What is the effect of discharging two of them ? We answer, the discharge of all.

The petition shows, that the debt is the whole debt of Morris, as between the parties. It does not show that when the plaintiff discharged two, he made any reservation of right against the others.

C. C. 2203. The remission or conventional discharge, in favor of one of the co-debtors *in solido*, discharges all the others, unless the creditor has expressly reserved his right against the latter.

In Irwin vs. Scribner, 15 An. 583, the Court held : Those who commit torts, or assist or encourage others in so doing, are bound *in solido* for the damage occasioned by the trespass ; the release of one of several debtors *in solido*, in an obligation arising from a trespass, operates the extinguishment of the debt as to the remaining co-debtors, unless the creditor has expressly reserved his right against the other debtors *in solido*. The same thing was held in Lynch vs. Leathers, 17 An. 118 ; Baldwin vs. Gray, 4. N. S. 192.

"La remise que le créancier fait pour éteindre la dette en total alors même qu'elle n'a été faite qu'a l'un des debiteurs les libère tous." 4 Marc. p. 475, Art. 1808.

2. But suppose the plaintiff wishes to withdraw the allegation of solidarity made in his petition, which we think he cannot do, for he alleges that the parties bound themselves to him

*in solido.* Then we say Morris and Legendre were liable, *in solido,* for the money, for a tort. Morris took the money, and Legendre concealed the fact from the Bank. As between Morris and Legendre, because the affairs for which the debt had been contracted, *in solido,* concerned only Morris; he, Morris, is liable for the whole debt towards Legendre. Legendre is to be considered only as his surety.  C. C. 2106.

We have said that Legendre and Morris were liable to the Bank *in solido.* These defendants were the sureties of Legendre, to secure the debt which was primarily that of Morris, and as is alleged in the petition, concerned only Morris, for he alone is alleged to have taken the money. The Bank had the bond of Morris, ample and sufficient security. We contend, and we contend for this, without any reference to the law of legal subrogation, that inasmuch as the Bank has made its loss a voluntary loss, and has cancelled the securities that it held for the debt, it cannot proceed either against Legendre or his sureties. Suppose the Bank had had $20,000 instead of the bond, could the Bank surrender them to Morris and his sureties, and then proceed against Legendre and his sureties?

The Bank, in the petition, says the debt is wholly that of Morris; that Morris took the money ; that Legendre took no part of it; his liability is claimed because he concealed the fact from the Bank.

Story Eq. Jur. § 499,says: The general principle that the surety, upon payment of the debt, is entitled to be subrogated to all the rights of the creditor is extensively discussed, and fully maintained by the New York Court of Appeals. This was where the creditor held a chattel mortage as collateral security, for a debt for the payment of which the plaintiff stood as security, and after paying the debt, the court held he was entitled to stand in the place of the creditor in all respects, as to the chattel mortgage, and enforce it to the same extent, and in the same mode he might have done.     *     *     Each surety is entitled to the benefit of all the securities held, either by the creditor, or by the other sureties. § 500: Upon this subject, a far more liberal and comprehensive doctrine pervades the Roman law. Not only is the surety by that law entitled, in such case, to the benefit of all collateral securities taken by the creditor, but he is also entitled to be substituted as to the very debt itself, to the creditor, by way of cession or assignment. And upon such cession or assignment, upon payment of the debt by the security, the debt is in favor of the surety, treated not so much, as paid, as sold; not as extinguished, but as transferred, with all its original obligatory force against the principal.  § 502: The same doctrine has been in some measure transfused into the English law in an analogous form, not indeed, by requiring an assignment or cession of the debt to be made; but by putting the surety paying the debt, under some circumstances in the place of the creditor. And if the creditor should knowingly have done any act to deprive the surety of this benefit, the surety, as against him, would be entitled by the same equity as if the act had not been done.

In Renegar vs. Thompson, 1 Lea. Tenn. 457, it was held, if a creditor has taken a mortgage from the principal debtor, sufficient to secure the debt, makes an agreement to abandon the mortgage, the surety is discharged and may make defense at law.

In Darby and Tremoulet vs. Fusilier, 21 An. 636, the Court held, the failure of the merchants to exact payment for their advances, when they had funds sufficient on hand from the proceeds of the crop, discharged the mortgage given by a third person to secure the advances.

In Hill & Co. vs. Bourcier, 29 An. 844, the Court held, if any of the securities by which the debt is secured, are lost by the fault of the creditor, the surety is discharged to the extent of their value.

2 An. 428, Saulet vs. Trepagnier: a surety is entitled to the benefit of all the securities in the hands of the creditor, and if any of them be lost by his wilful neglect or want of due diligence, the surety is, to that extent, discharged.

5 Rob. 213, Penn vs. Collins, where the lessors of property, having sued the lessees for the rent due, and to become due, under the contract, and caused property, on which they had the lessor's privilege, to be seized to an amount equal to the rent due, and to become due, abandon the seizure without a trial, the securities of the lessees will be discharged.

Price vs. Trasdell, 28 N. J. Eq. 200; U. S. Dig. N. S Vol 9, p. 613: We take the rule to be, that when two persons are bound to a third for the same debt, a right of subrogation thereto, and of recourse for the amount paid, upon his co-obligor, any contract between the creditor and the ultimate debtor, whereby delay is granted, or securities surrendered or diminished, will discharge the obligor entitled to such recourse and subrogation, if his consent be not obtained. The creditor in such case must maintain a position which will enable him to subrogate the party paying to all the original rights, privileges and actions incident to the debt. See also, 1 Rob. 301; 9 An. 497; Bayley on Bills, 357; Story on Notes, No. 544; 3 R. 299; Gay & Co. vs. Blanchard, 32 An. 497.

Freener vs. Yangling, 37 Md. 491; 4 U. S. Dig. N. S. p. 564, No. 43: The surety may be exonerated from liability to the extent to which he is prejudiced by the positive act of the creditor in parting with legal or equitable securities which the latter might have held for the benefit and protection of the surety, although he may not have known of the existence of the securities held by the creditor or though they may have been taken subsequently to the date of the contract of suretyship.

Boyd vs. McDonough, 39 How. N. Y. Pr. Rep. p. 389: The right of subrogation is recognized by courts of law, as well as courts of equity, and any act impairing or interfering with it, which would release the surety from liability in equity, will also relieve him in law.

Succession of Daigle, 15 An. 594: Where two parties purchased together certain landed property, each one undivided half, and furnished for the price their joint and several promissory notes, secured by mortgage on the land purchased. Held, that these parties must be considered as purchasers and principal obligors, each for one-half only of the property purchased, and as sureties for each other mutually as to the other half; and that, consequently, the purchase of one-half by the original vendor, from one of these purchasers, releases the remaining purchaser from his obligation as surety, as it renders impossible that subrogation to which he would be entitled under Articles 2157 and 3030, C. C.

Guild vs. Butler, 127 Mass. 386; XI U. S. Dig. p. 716: A surety is entitled in equity to the benefit of any collateral security received by the creditor from the principal debtor; and if the creditor, knowing the relation between the debtors, surrenders part of such security without the consent of the surety, the surety is exonerated to the amount surrendered.

The proof that the Bank cancelled the security it held for the debt is to be found in the petition, which alleges that on or about the 17th of May, 1882, two of the sureties on said bond of said Morris, to-wit: John B. Couret and Samuel Boyd, paid to petitioner $10,000 of the said $15,000, in order to effect their release and discharge as sureties on said bond, thus leaving a balance of $5,000, still due and unpaid of said $15,000.

And in the further allegation in the petition, that the Bank released the sureties of Morris on a previous bond, which sureties the Bank alleges were liable for the debt.

We respectfully submit we have shown:

1. That the remission or conventional discharge in favor of one of the co-debtors *in solido*, discharges all the others, unless the creditor has expressly reserved his right against the others.

2. That a surety is entitled to all the securities that the creditor held for the debt, and if he destroys any, the surety is relieved to the extent of the security destroyed.

3. That the loss of the Bank is a voluntary loss, and the Bank can have no action for it.

---

ON MOTION TO DISMISS.

The opinion of the Court was delivered by

TODD, J. The motion to dismiss is on the following grounds:

1. "That it does not appear that any order granting an appeal was entered on the minutes of the court."

It does not so appear in the original record, but by means of a *certiorari* the record was corrected, and it now appears that the entry was properly and seasonably made.

2. " That the defendant had abandoned his appeal by not filing his transcript in this Court within three judicial days from the 1st Monday of November."

The judgment appealed from was rendered in the District Court on the 1st of July, 1881. On the next day, plaintiff and appellant moved for an appeal, and on the same day an order of appeal was rendered and the appeal bond filed. By this order the appeal was made returnable on the — day of November, 1881, the day not being fixed in the order by the Judge granting it.

The transcript was not filed in this Court on the 1st of November, nor within three judicial days thereafter, but on the fifteenth of that month, the plaintiff and appellant appeared in the court *a qua*, and suggesting that the order was defective on account of this omission, the Judge supplied the omission and named the 21st day of November as the return day, and the record was filed in this Court the same day the correction was made, (the 15th November, 1881).

We think this was sufficient. This precise question arose in the case of Laicher vs. The N. O. & J. R. R., 28 An. 320, from which we quote as follows:

" The plaintiff moves to dismiss the appeal because the transcript was not filed in this Court within three judicial days from the return day.

" It appears that on the 30th of December, 1872, the defendant filed a petition for an appeal, and the Judge, in granting the order, omitted to fix the return day. Subsequently, to-wit: on the 8th of March, 1873, he made an order fixing the return day on the 3d Monday of March, 1873, at which time the transcript was filed in this Court.

" The fault is not attributable to the appellant. It was an error of the Judge, and the appeal cannot be dismissed on account thereof."

This decision accords with the spirit of the Act of 1839, under the liberal policy of which an appellant was relieved of all irregularities in the proceedings relating to the appeal, not attributable to his fault, and has prompted the Courts, in all cases of doubt on this point, to give to the appellant the benefit of such doubt. It may be that this principle has been extended so far that, as argued by the appellee's counsel, had the transcript been filed in this Court on or before the return day, with the omission as to the return day unsupplied, the appeal would not have been dismissed. But it by no means follows from this, that the appellant, failing to take such risk, prefers to have

the correction made, and files his transcript in this Court on or before the day actually named and fixed by the Judge, loses his right to appeal. Whatever may be the irregularity of the proceeding, the primary cause of it was the fault or omission of the Judge, for which the appellant should not be punished.

3. "That the appellants have not been cited to answer the appeal."

The order of appeal was rendered in open court, and when an appeal is thus taken, no citation is necessary. The subsequent order fixing the day was not a new order of appeal, but merely a correction of the previous order, a perfecting of an existing appeal, and no citation was required. This distinguishes this case from that of Fournet vs. Van Wickle, cited, which merely determined that an appeal taken in open court, defective because the amount of the bond was not fixed by the Judge, could not be perfected by an order rendered in chambers, on the petition of the appellant.

For these reasons the motion to dismiss is denied.

ON THE MERITS.

The opinion of the Court was delivered by

FENNER, J. This appeal being taken from a judgment sustaining an exception of no cause of action, it is necessary to state succinctly, but fully, the allegations of the petition. They are: that the defendants, George Legendre, Bright, and the succession of Emile Legendre, are indebted, *in solido*, in the sum of $5,000, as principal and sureties on the bond of George Legendre, given for the faithful performance of his duties as bookkeeper and clerk of plaintiff; that during the term of said Legendre's employment, one Felix Morris was in the employ of plaintiff as paying teller, who had also furnished bond with sureties; that said Morris embezzled $15,000 of plaintiff's money; that Legendre, in gross violation of his duties, knowingly encouraged, connived at and concealed the wrongful acts of said Morris, thereby inducing plaintiff to retain the latter, and enabling him successfully to embezzle the money; that, by reason of the breach of the conditions of their respective bonds, "*the said Morris and the sureties on his bond as paying teller, and the said George Legendre and the sureties on his bond as bookkeeper and clerk aforesaid, became justly liable to your petitioner in solido,*" for the loss and damage aforesaid, viz., $15,000; that said Morris having died, two of the sureties on his bond "paid to petitioner $10,000, in order to effect *their* release and discharge as sureties on said bond," leaving a balance of $5,000 due, for which "the succession of said Morris and the said Legendre, and his said surety, Geo. L. Bright, and the succession of his other surety, Emile Legendre, are

liable *in solido* to petitioner," and judgment is accordingly asked against Legendre and his sureties *in solido*.

The grounds upon which the exception of no cause of action is based, are:

1. That it being alleged in the petition that Legendre and his sureties, and Morris and his sureties, are all debtors *in solido*, the admitted conventional discharge of two of them, under C. C. 2203, " discharges all the others, unless the creditor has expressly reserved his right against the latter," which last reservation is not alleged.

We are not disposed to give the effect claimed by exceptors to the allegations of solidarity contained in the petition.

That document clearly and distinctly sets forth the *facts* upon which the liability of defendants is based. Those facts are, that Morris and Legendre had each given separate bonds with distinct sureties for the faithful performance of the duties of their respective employments; that Morris had broken the conditions of *his* bond by embezzling $15,000; that Legendre had broken the conditions of *his* bond by wrongful and undutiful acts of connivance and concealment, without which the loss occasioned to the Bank would not have occurred.

From these facts it sufficiently appears that, if proved, the Bank had suffered a loss, for which Legendre and his surities were liable *in solido* ; and for which Morris and his surities were also liable *in solido;* and for which, perhaps, Morris and Legendre, individually, as co-trespasers, were also liable *in solido ;* thus presenting three *groups* of solidary obligations for the same *object,* but each having a different juridical cause.

The *cause* of the first group was the breach of the condition of Legendre's bond; of the second, the breach of the condition of Morris' bond; of the third, the co-trespass of Morris and Legendre.

In drawing his petition, plaintiff was not writing a juristic treatise, and, in affirming the solidary liability of all these parties for the loss, he was not required to define nicely their relations to each other in respect to that solidarity. The sufficient and obvious purpose of the allegation was to charge that each and every one of the persons named was responsible for the whole debt. From the facts set forth in the petition, it is clear that the relation of solidary obligors *inter sese* did not exist between the discharged sureties of Morris and the defendants. A reasonable construction of plaintiff's averments touching solidarity absolves him from the intention of asserting so palpable an error. Even if he had done so, it would be merely an erroneous legal conclu-

100

sion, which could not, under an exception of no cause of action, operate to destroy a liability resulting from the *facts* charged.

· 2. It is next urged that, inasmuch as it appears from the petition that Morris was the sole beneficiary of the embezzlement, he was pri-. marily liable for its restitution; that if Legendre and his sureties should be compelled to pay any portion of said loss, they would be entitled to legal subrogation to the rights and actions of the Bank against Morris and his sureties; and that, therefore, the conventional discharge of Morris' sureties having rendered impossible legal subro-. gation to the Bank's rights against them, the Bank's recourse on the defendants is destroyed.

No nice analysis of the juridical elements of the various obligations of these parties and their relations to each other, is necessary to demonstrate the fallacy of this position. The spectacle of Legendre, a cotrespasser, seeking to recover from the innocent sureties of Morris, what he had paid in reimbursement of a loss occasioned by his own fault, would be equally shocking to legal principles and to common sense. Nor would the sureties of Legendre stand in better case, although themselves innocent. By paying the debt of their principal, they would only succeed to those rights and actions, whether of subrogation or other, which he would have been entitled to, had he paid himself. Rev. C. C. 2161, No. 3.

The debt which they would have paid would have been a debt arising from the breach of their contractual obligation to respond for any damage occasioned by the undutiful conduct of Legendre. The sureties of Morris were not parties to that contract and were not bound " for or with " them for the faithful and dutiful conduct of Legendre.

3. It is finally claimed that, on payment of the loss, Legendre, and consequently his sureties would, at all events, be entitled to subroga-. tion to the Bank's rights against the co-trespasser, Morris, who was in greater fault, and the sole beneficiary of the trespass; that the discharge of the sureties operated the discharge of Morris also, because he and his sureties, though bearing to each other the relation of principal and sureties, were, as to the Bank, by the terms of the bond, solidary obligors.

Waiving the questions as to whether one *co-trespasser* can claim contribution from the other, and whether, if it exists, such right arises through any process of subrogation, it is a sufficient answer to this proposition that, from the petition, it does not appear that Morris has been discharged. The petition asserts his continued liability, which negates the idea of his conventional discharge. Exceptors, however, claim that he is discharged by operation of law, by reason of the

conventional discharge of his sureties, who had bound themselves *in solido* with him.

This contention is based on Articles 2203 and 3045 of the Rev. Civil Code, the first of which declares that " the remission or conventional discharge in favor of one of the co-debtors *in solido* discharges all the others, unless the creditor has expressly reserved his right against the latter;" and the other provides :

" The obligation of the surety towards the creditor is to pay him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized, unless the security should have renounced the plea of discussion, or should be bound *in solido* jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors *in solido*."

The construction contended for, that the discharge of the surety who has bound himself *in solido* with the principal, operates the latter's discharge, would be a " sticking in the back," which could not be countenanced, even if it were not, otherwise, entirely unfounded.

The Section of the Code in which Article 3045 is found, treats of the " effects of suretyship between the creditor and the surety," and regulates the mode in which, and the conditions under which, the creditor may enforce his recourse against the surety, including the privileges of discussion and division and other provisions in the surety's interest. The plain meaning of Art. 3045 is, that when the surety has bound himself *in solido* with the debtor, he shall not be entitled to these privileges and benefits, but that, so far as concerns the rights of the creditor, the effects of his engagement shall be regulated by the principles applicable to debtors *in solido*.

As between the principal and surety, however, it is admitted on all hands that their relations remain the same.

From *this* relation springs the principle that the discharge of the principal debtor discharges the surety, but the discharge of the surety does not discharge the principal. Rev. C. C. 2205. Why? Because, from the nature of this relation, the surety who pays is entitled to subrogation to the rights of the creditor against the principal, while the principal who pays has no such right against the surety.

Authority in support of exceptors' proposition on this subject is not, and we confidently believe cannot be, produced.

Holding, therefore, 1st, that Morris has not been discharged, and, therefore, that defendants' recourse upon him, whatever it may be, is preserved in tact; 2d, that the discharge of the sureties on the bond of Morris has no legal effect upon the rights of defendants for want of

Czarnowski vs. Zeyer.

any *vinculum juris* between them and said sureties, we conclude that the exception of no cause of action was improperly maintained.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that the exceptions of defendants be overruled, and the case be remanded to the lower court, to be proceeded with according to law; appellees to pay costs in both Courts.

Poché, J., takes no part in this case.

Rehearing refused.