WARREN C. MERRILL & another *vs.* THE PREBILT CO.

Suffolk.    May 6, 1952. — July 2, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Contract,* Assumption of liability. *Exoneration.    Surety.    Release.*

Where a broker, after earning a commission through procuring a prospective purchaser of shares of stock with whom the owner of the shares made a contract of sale and purchase providing that the prospective purchaser should "assume and pay any and all brokerage commissions" resulting from the prospective sale, took from the owner an assignment of "all claims and demands . . . [of the owner against the prospective purchaser] by reason of . . . breach by" the prospective purchaser of such contract and simultaneously gave the owner a release from "any and all claims . . . for broker's commission," the broker as assignee was not precluded by the release from recovering the amount of the commission from the prospective purchaser under the provision of the contract respecting his assumption and payment of the commission.

CONTRACT.    Writ in the Superior Court dated October 30, 1947.

The defendant alleged exceptions following a hearing by *Hudson,* J., who found for the plaintiffs.

*Harry Finn,* for the defendant.

*James G. Fay,* for the plaintiffs.

LUMMUS, J.    On January 14, 1946, the defendant, a corporation, entered into a written agreement with all the stockholders of Nashua Milling Corporation to buy 300 shares, being all the outstanding stock, of the latter corporation at $600 a share, to be transferred on February 14, 1946. The plaintiffs, Merrill and Donovan, were brokers who had brought the parties together.    By the agreement the defendant agreed to "assume and pay any and all brokerage commissions due or that may be due as a result of the pur-

chase and sale of the above shares," and to obtain from the plaintiffs releases releasing each of the said stockholders from any liability to the plaintiffs, and to cause Nashua Milling Corporation or its successors to cancel the unpaid balances owed to it on notes by one Gunter and one Mayo, two of its stockholders.

In one count the plaintiffs, as assignees of such stockholders, claim damages for breach by the defendant of its contract to buy the stock. In another count the plaintiffs, as assignees of such stockholders, claim damages for breach by the defendant of its contract to buy the stock and to assume and pay brokerage commissions and to cancel the unpaid balances on notes by said Gunter and Mayo.

There was evidence to the following effect. The stockholders agreed to pay the plaintiffs a commission of five per cent, or $9,000, on the price of $180,000. The amount owed to Nashua Milling Corporation by Gunter and Mayo was $2,500. The defendant did not perform its contract to buy the stock. The stockholders then sold their stock to R. S. Robie Company for $165,000, paying a commission of $2,000 to a broker. The Robie offer was the best offer they could get after much effort. Ten acres of land worth $1,000 were excluded from the sale to R. S. Robie Company. The plaintiffs claimed their commission of $9,000 from the stockholders. As a result, on July 15, 1947, the stockholders gave the plaintiffs an assignment of "all claims and demands which we now have against The Prebilt Co., a Massachusetts corporation, by reason of the breach by the latter corporation of its contract dated January 14, 1946." On the same day, July 15, 1947, the stockholders entered into a written agreement with the plaintiffs, which referred to that assignment and provided that the proceeds of the prosecution of the claims assigned should be divided among the assignors and assignees in specified proportions, and provided also that the assignees, the present plaintiffs, "do hereby release, discharge and forever hold harmless the said assignors, individually and jointly, and the Nashua Milling Corporation, from any and all claims which we,

jointly or individually, might now have for brokers' commission against the said assignors. or the corporation with reference to the contract above referred to between the said assignors and the Prebilt Company."

A judge of the Superior Court, sitting without a jury, found that the plaintiffs were entitled under the assignment to recover a commission of $9,000, and also the difference between the agreed price of the proposed sale to the defendant, $180,000, and what was obtained from the sale to R. S. Robie Company, $163,000, less $1,000 for the land reserved in the sale to R. S. .Robie Company. In other words, he found for the plaintiffs for $25,000. To that sum he added interest amounting to $7,500. He allowed nothing because of the amount owed by Gunter and Mayo. The case is here on the exceptions of the defendant to the refusal of certain requests for rulings presented by the defendant.

In its brief the defendant attacks only the inclusion of the plaintiffs' claim for a commission of $9,000 in the damages awarded. Other possible questions are thereby waived. *Commonwealth* v. *Gale*, 317 Mass. 274, 276. *Richmond* v. *Stanzler*, 327 Mass. 62, 63–64. *Beaulieu* v. *Lincoln Rides, Inc.* 328 Mass. 427, 429. In its brief the defendant concedes that the plaintiffs earned a commission payable by the stockholders, and by its contract with the stockholders the defendant assumed the payment of that commission. The plaintiffs could sue in their own names under G. L. (Ter. Ed.) c. 231, § 5, "subject to all defences . . . to which the defendant would have been entitled had the action been brought in the name of the assignor." *Edmund Wright Ginsberg Corp.* v. *C. D. Kepner Leather Co.* 317 Mass. 581, 585–586.

The only ruling requested by the defendant that relates to the only question now open, was that "the plaintiffs having released the sellers of the stock of Nashua Milling Corporation from any and all claims for commission on account of the proposed sale of said stock, the plaintiffs cannot recover the said commission in this action." That ruling the judge refused to give.

By the agreement of January 14, 1946, the defendant assumed the payment of the brokerage commission to the plaintiffs, and became the party primarily liable therefor. *Pappone* v. *Masters*, 325 Mass. 437. The stockholders became only secondarily liable, like sureties. The defendant owed to the stockholders the duty of paying the commission and relieving them from liability. *Ricker* v. *Ricker*, 248 Mass. 549, 551. The stockholders could recover the amount of the commission from the defendant, even though they had not paid it to the plaintiffs. *Locke* v. *Homer*, 131 Mass. 93. *Walton* v. *Ruggles*, 180 Mass. 24. *Schneider* v. *Armour & Co.* 323 Mass. 28. Williston, Contracts (Rev. ed. 1936) §§ 392, 1408. The release of the stockholders did no harm to the defendant, for if the defendant had paid the commission to the plaintiffs it could not have recovered over against the stockholders, in the face of its own contract to assume the payment of that commission. It is well settled that the release of a surety does not discharge the principal debtor. *Commercial Bank* v. *Cunningham*, 24 Pick. 270, 275. *New Orleans* v. *Gaines's Administrator*, 138 U. S. 595, 610. *In re Kimbrough-Veasey Co.* 292 Fed. 757, 758. *Mumford* v. *Solomon*, 8 Ga. App. 286. *Union National Bank* v. *Legendre*, 35 La. Ann. 787, 795. *Austin-Western Road Machinery Co.* v. *John A. Spencer, Inc.* 187 Miss. 388. *Coleman* v. *Beck*, 142 Neb. 13, 21. *Tombeckbe Bank* v. *Stratton*, 7 Wend. (N. Y.) 429. *First & Citizens National Bank* v. *Hinton*, 216 N. C. 159. *Mortland* v. *Himes*, 8 Pa. 265, 269. *Ragsdale* v. *Gossett*, 70 Tenn. 729, 733. *Bridges* v. *Phillips*, 17 Texas, 128, 130. *McIlhenny Co.* v. *Blum*, 68 Texas, 197.

We think that the ruling requested by the defendant could not properly have been given, and that no error appears upon the record.

*Exceptions overruled.*