# NELLIE B. BROWN, Respondent, v. NOAH LEEAK, et al. T. H. McMILLAN, Appellant.

## (203 N. W. 185.)

**Mortgages — contract to pay existing incumbrances; intention to assume and pay mortgage may appear from entire instrument or be implied from facts and circumstances.**

1. The contract by which a grantee assumes the payment of existing incumbrances is separate and distinct from the conveyance. It may be embodied in the deed, it may appear in another instrument, or it may rest in parol. The intention to assume and pay the mortgage indebtedness may appear without a formal promise from a consideration of the entire instrument of transfer; or it may be implied from all the facts and circumstances.

**Mortgages — conveyance subject to existing incumbrances does not alone obligate purchaser to pay mortgage debt.**

2. A conveyance, made subject to an existing and specified incumbrance, does not alone obligate the grantee to pay the mortgage debt.

**Mortgages — on exchange of equities of redemption subject to existing mortgage, presumption that purchaser assumes mortgage debt does not arise.**

3. When equities of redemption are exchanged, subject to an existing mortgage, no presumption arises that the grantee assumes and agrees to pay the mortgage debt, and ordinarily he is not personally liable.

**Mortgages — assumption of mortgage debt is enforceable; promise to assume made subsequent to transfer and independent thereof, must be supported by consideration.**

4. A promise to assume a mortgage, made by the grantee of the premises, is enforcible on the theory that the assumption of the debt constitutes a part of the consideration for the grant. If such promise be made subsequent to the transfer and independent thereof, it must be supported by a consideration.

Opinion filed March 11, 1925.

Mortgages, 27 Cyc. p. 1341 n. 79; p. 1344 n. 97; p. 1345 n. 98, 1, 4; p. 1346 n. 14; p. 1348 n. 27 New; p. 1349 n. 32, 33 New.

---

Note.— (4) Personal liability of purchaser of equity of redemption for mortgage debt in absence of express assumption thereof, see annotation in L.R.A.1917C, 592; 19 R. C. L. 381; 3 R. C. L. Supp. 938; 4 R. C. L. Supp. 1278; 5 R. C. L. Supp. 1033.

Appeal by T. H. McMillan from the District Court of Traill County, *Cole*, J.

Reversed and dismissed.

*P. G. Swenson,* for appellant.

A deed which is merely made subject to a mortgage specified does not alone render the grantee personally liable for the mortgage debt. To create such liability there must be such words as will clearly import that the grantee assumed the obligation of paying the debt. 1 Jones, Mortg. § 748; 19 R. C. L. p. 380; Granger v. Roll, 5 S. D. 611, 62 N. W. 970.

Where a conveyance of land is made expressly subject to an existing mortgage, the effect as between the grantor and grantee, is to charge the encumbrance primarily on the land, so as to prevent the purchaser from claiming reimbursement or satisfaction from his vendor in case he loses the land by foreclosure, or is compelled to pay the mortgage to save a foreclosure. 27 Cyc. 1340; Fuller v. Devold (Mo.) 128 S. W. 1011.

A promise made by the purchaser to the mortgagee subsequent to the conveyance, and not based upon any new consideration, is not sufficient. Frase v. Lee (Mo.) 134 S. W. 10; Andrews v. Robertson (Cal.) 170 Pac. 1129; Green v. Hall (Neb.) 63 N. W. 119.

*Kaldor & Johnson,* for respondent.

When a Deed is given to land in which it is set out there is a certain amount of mortgage against the land, this raises the presumption that the encumbrance was deducted from the purchase price and that the grantee assumes and agrees to pay the mortgage. McDonald v. Finseth, 32 N. D. 400.

Where a grantee of real property assumes the payment of an encumbrance thereon, such contract of assumption is an original undertaking on his part, distinct from the contract of purchase. It may be contained at the conveyance, or it may be by a separate writing, or it may rest entirely in parole. Moore v. Booker, 4 N. D. 549.

Where the purchase is subject to the mortgage and the amount of the mortgage has been retained by the purchaser out of the purchase price, he will be held to have assumed the payment of the mortgage and is liable in an action to the mortgagee. Bristol Sav. Bank v. Stinger (Iowa) 53 N. W. 265.

When a mortgage provides that the mortgagee may elect to declare the full amount secured by the mortgage to be due when there is a default in the terms of the mortgage, this makes the entire indebtedness secure by the mortgage due, and that even though notes secured by the mortgage is not due, nevertheless, the mortgage can be foreclosed for the full amount and if the land does not bring at the sale the full amount of such sum declared to be due under the terms of the mortgage, then a deficiency judgment may be entered. Houghton Imp. Co. v. Vauvowski (N. D.) 125 N. W. 1024; Ugland v. Farmers & M. State Bank, 23 N. D. 536; Crisp v. State Bank, 32 N. D. 263.

JOHNSON, J. This is an action to foreclose a mortgage upon a half section of land in Traill County, executed by the defendants, Noah Leeak and his wife. The complaint is in the usual form. The Leeaks defaulted. The trial court decreed a foreclosure of the mortgage. A deficiency judgment was entered against the defendant McMillan. He appeals and asks for a trial de novo.

The following statement of facts is contained in appellant's brief, and is conceded to be correct by the respondent.

"On November 6th, 1920, the defendants, Noah Leeak and Tillie Leeak, executed and delivered to the plaintiff, Nellie B. Brown, four notes for the sum of $1,000 each, payable on the first day of December in the year 1921, 1922, 1923 and 1924, and one note for $11,000 payable on the first day of December, 1925, all of the notes bearing six per cent interest from December first, 1920, payable annually on the first day of December each year thereafter. To secure the payment of these notes, the makers thereof executed and delivered to the payee, Nellie B. Brown, a mortgage covering the North-half of Section eleven, in Township 144, Range 52, situated in Traill County, North Dakota, and designated in this Brief as the Traill County land or property.

"On October 15, 1921, the defendants, Noah Leeak and Tillie Leeak conveyed a portion of this land, viz.: the northeast quarter, to the defendant McMillan, by warranty deed (Exhibit 3), such deed containing a clause . . . that the same are free from all incumbrances, except an incumbrance of Seventy Five Hundred Dollars ($7500.00) being one-half of a mortgage for the sum of Fifteen Thousand Dollars, given by first parties to Nellie B. Brown, covering the North Half

of Section 11, in Township 144 North, of Range Fifty-two (52) West of the Fifth Principal Meridian." This transaction was made in accordance with the terms of a prior exchange agreement (Defendant's exhibit "100") executed on the 10th day of October, 1921, wherein the defendant Leeak agreed to convey the above mentioned northeast quarter to the defendant McMillan in exchange for certain property therein described and situated in the State of Missouri, which property was then owned by the defendant, McMillan.

"By the terms of the Agreement for Exchange of Land (Defendant's exhibit '100'), McMillan agreed to convey to Leeak two pieces of property located in Missouri (and hereafter designated as the Missouri property) at the price of $11,200 (P. 105, line 23) Leeak in turn agreed to convey the Traill county property to any party McMillan might designate (P. 106, line 13 S. C.). This tract was priced at $85 per acre or $13,450, and being subject to a $7,500 mortgage, the equity was figured at $5,950 (P. 106, line 1). The note for $1250, mentioned in Defendant's exhibition '100' represented earnest money and was later returned.

"Default having been made in the payment of the first two notes secured by the mortgage, and in the payment of the accrued interest on the remaining notes, the plaintiff on the 3rd of June, 1923, caused the thirty day statutory notice of intention to foreclose to be mailed to Noah Leeak and T. H. McMillan, and the amounts in default not having been paid, the plaintiff thereafter commenced an action in the district court of Traill county, North Dakota, to foreclose the mortgage and to hold the defendants, including T. H. McMillan, liable for deficiency judgment. The defendant, T. H. McMillan interposed his separate answer denying that he had assumed and agreed to pay a part of the mortgage as alleged in the complaint. No answer was made by the other defendants. The matter was tried before Honorable A. T. Cole, one of the Judges of the district court of Traill county, on the 4th day of April, 1924, and on the 3d day of June, 1924, the court made its findings of Fact, Conclusions of Law and Order for Judgment, finding that the defendant McMillan had assumed to pay half of the mortgage as a part of the purchase price (P. 29, lines 2 and 3 S. C.) and adjudging that said McMillan was personally liable for the sum of $8,217.50, together with statutory costs,

etc. (Page 32, line 21), and further, if the proceeds from the sale of the premises conveyed by the mortgage and decreed to be sold were insufficient to pay the same, that a deficiency judgment be entered against T. H. McMillan, for the amount still remaining due. On the 6th of June, 1924, judgment was so entered. The Northeast quarter, now owned by McMillan, was sold on execution, pursuant to said judgment, for the sum of $6,400 and judgment for the deficiency of $2112.-15, was entered against the defendant, T. H. McMillan, from which judgment of deficiency, the defendant T. H. McMillan appeals."

Defendant's Exhibit 100, is the contract of purchase and sale between Leeak and McMillan. In the paragraph describing the consideration agreed to be paid by Leeak for the transfer to him of the Missouri property, is a clause as follows: "$5,250.00 in mortgage or mortgages in said land which second party hereby assumes and agrees to pay or to give as follows:" then follows a recital of three mortgages aggregating $5,250.00 two payable December first, 1923, and one July first, 1924. It appears from the contract that Leeak agreed either to execute a mortgage on the McMillan property or to assume existing mortgages. McMillan testifies that he arranged loans for Leeak on the McMillan property. He says:

Q. In exchanging this property, that is, your property in Missouri for this quarter section of land, did Leeak, that is, Noah Leeak, has Noah Leeak, as a matter of fact, paid you any cash at all?

A. He has not; he did not.

Q. Did he give you any note of any kind that you retained to pay anything in the future?

A. *I placed some loans for him as a part of the transaction.*

Q. And that became an incumbrance on the property you deeded to him?

A. It did.

It is, therefore, a fair inference from the testimony that at least some of the mortgages, which Leeak assumed and agreed to pay when the Missouri property was conveyed to him, were mortgages securing loans made for him by McMillan, as a part of the deal.

It is contended by McMillan that it was error to order a deficiency judgment against him; that he did not assume and agree to pay the incumbrance on the Traill county land when the transfer was made

to him by the Leeaks; that the transaction was merely an exchange of equities; and that the finding that he assumed the mortgage is without support in the evidence.

Plaintiff introduced three letters written by McMillan to the plaintiff dated November 21 and November 29, 1922 and January 11, 1923. She contends that these letters show an agreement to assume the mortgage and support the findings sufficiently. In the first letter, McMillan says:

"Your letter of September 11th was received and since that time have been trying to sell the NE¼-11-114-52 Traill county North Dakota which is covered by your mortgage loan but have not been able to do so and as the season for selling land up north is now practically ended for this year, I do not anticipate making a sale this year. Some time ago I took over the title to this quarter and turned [over to] Mr. Leeak most of the property he traded to me on the deal two years ago and thought that I would surely be able to sell this quarter on some kind of a basis so as to realize at least $1000.00 in cash with which to apply on your loan covering both quarters and have same divided on the basis you suggested in your letter but found this the poorest year for land business since I have been engaged in the business. I am ready to pay the interest on $7500.00 of your loan on December 1st and I am in hopes Mr. Leeak can raise his interest on the other $7500.00 by December 1st but he will not be able to pay any on principal and as I am unable in several cases to get any interest from my mortgage loans in North Dakota and in no case am I able to collect any on principal I will have to ask that you carry the principal notes another year and by that time I think I will be able to sell the quarter I have and realize cash enough to get division of the mortgage. I of course took over this quarter in order to relieve Mr. Leeak of so much interest payments and find I am obliged to put up interest money in face of poor crops and low prices and at the same time to insure as best I could the payment of interest each year to you even if no payment could be made on principal.

"I went over to Clinton last Saturday to see Mr. Marvel, making special trip of it, and conferred with him as suggested by you and I think he fully understands the situation as to small returns from crops at low prices. I told him that just as soon as I could dispose of the

one quarter that I felt payment could no doubt be made on principal and in the meantime I was going to endeavor to keep up interest and taxes on my quarter altho it would probably mean putting up money from outside sources to keep the loan against same at its present amount. I feel this is the best that can be done at the present time and I am arranging to see Mr. Leeak this week and will arrange if possible to have him mail me his check to your order for his part of the interest and I will forward both checks to you before December 1st."

In the second letter, McMillan enclosed check in payment of interest due on December 1, 1922 for $75.00. "Loans covering my Northeast Quarter and Mr. Leeak's Northwest Quarter of Section 11–144–52 Traill county, North Dakota." The letter continues:

"I have letter from Mr. Leeak a day or so ago advising me that he would be unable just now to arrange the money to pay his interest so for the present the matter is held up. I wrote him advising him to take the matter up with you direct and I presume he will write you. I can not carry all of the load for some of these parties who have purchased land as I am doing on the NE¼–11 by taking it over and it may be that I will want to divide the mortgage on some basis so I can sell my quarter and make some payment on principal thus working out part of the money for you. As the west Quarter is a little better than the east it may be the best plan to divide the mortgage as suggested by you but we can take this up later. You will probably be disappointed in not receiving Mr. Leeak's remittance but I have found it the same way in some cases where I had planned on using funds due to me which were not paid as they should be."

In the third letter McMillan refers to the liability of Leeak to make payments of second mortgage on the same premises. The letter then continues:

"I think if he will consider the matter fully that it would be much better for him to hold the land until conditions for the sale of land change and he may be able to sell better later. As far as I am concerned I will arrange to extend his paper and interest and if you will do the same may be he can work out to a good advantage before another year.

"I have all the land I want to take on at this time as I have the east

quarter to handle in addition to my other lands and I believe he will consider the matter differently after thinking the matter over. I have letter a day or so ago from Mr. Marvel and I am writing him along the lines of this letter. In case Mr. Leeak insists on deeding over the land it could be arranged later by giving me credit on the $7500.00 on the east quarter for the $700.00 or less owing on the second mortgage on the west quarter and I would secure release of same to you but in the meantime I will see if I can not make Mr. Leeak see that. it is to his interest to hold the land until times change."

The only question before the trial court was thus stated by counsel for the plaintiff. "This is a case to foreclose a mortgage, and the only dispute is as to whether Mr. McMillan is liable for a deficiency judgment. He purchased one of the quarters, as I recall, of this half section of land that the mortgage covers, and our contention is that when he purchased that, it was understood, and he assumed as a part of the purchase price, half of the mortgage against the half-section, and the only question in this case is whether he is liable for a deficiency judgment." In addition to the question stated, appellant challenges, for the first time in this court, the right of the plaintiff to a deficiency judgment on the note for $1,000 due December 1, 1924, and on the note for the $11,000.00 due December 1, 1925. He concedes that under the acceleration clause the mortgage could be foreclosed for the full amount, but denies the propriety of a deficiency judgment for any indebtedness not due and payable at the time the judgment was entered.

Respondent relies very largely on McDonald v. Finseth, 32 N. D. 400, L.R.A.1916D, 149, 155 N. W. 863. Two questions were more or less directly involved in that case; one pertained to the right of the beneficiary in a contract, from whom no consideration directly proceeds, to maintain an action thereon when the contract or promise was made expressly for his benefit; the other proposition raised the question of the propriety of a deficiency judgment against "the grantee of mortgaged premises who purchases, subject to a mortgage which he assumes and agrees to pay, will be held liable for a deficiency arising on a foreclosure and sale, even though his grantor is not personally liable for the payment of the mortgage." Upon the second question there was and still is, much conflict in the authorities. Our court held

such a judgment proper. No other point, bearing upon any question in the instant case was before the court. The mortgage in that case contained a clause expressly assuming the debt and the court held that the mortgagee was entitled to the benefit of that agreement although no assumption clause was contained in a prior mesne conveyance.

McMillan was called for cross-examination under the statute and unequivocally denied that there was any agreement to assume the mortgage, stating that the transaction was an exchange of equities. He says that the equity in the property conveyed by him to Leeak was probably not to exceed $500.00, according to the estimates of persons more familiar with values in Missouri than McMillan said he was; that it had very little value; and that the value of $500.00 was represented by personal property in a garage in Missouri, all of which was transferred to the Leeaks when the exchange was made.

In the instant case there is no assumption clause in the warranty deed from the Leeaks to McMillan; and the oral testimony of McMillan, the only witness testifying on the subject, unequivocally negatives the existence of any agreement at any time to assume and pay the mortgage. The two cases are essentially different in the facts, and, in our judgment, require the application of fundamentally different rules of law. Respondent here relies apparently on a presumption, stated by this court, in McDonald v. Finseth in the following language, and quoted in respondent's brief: "This court must, nevertheless, take judicial notice of the well established customs of business and trade, and it will not be presumed, *in the absence of proof,* that any person would take a deed to land which was subject to a mortgage without deducting such amount from the purchase price, nor that he would rely entirely on the covenants of warranty of his grantor to protect his purchase." (Italics are ours.) It requires no discussion to demonstrate that the foregoing presumption is wholly inapposite in the instant case. In the first place, the only testimony on the subject is to the effect that the transaction was an exchange of equities, whereby the grantee purchased only Leeak's equity, leaving no portion of the purchase price unpaid; in the second place, it cannot be said that there is an "absence of proof" on the subject, for McMillan's testimony fully supports the theory that the transaction was merely an exchange. The other parties to the transaction, the Leeaks, did not testify, and McMillan's

version is undisputed, unless he be contradicted by the letters heretofore set out. Otherwise, the record is without proof that McMillan promised to assume the mortgage so as to enable the mortgagee to maintain an action and bring herself within the rule that a contract made for the benefit of a third person may be enforced by the beneficiary although no consideration moves directly from her. Comp. Laws 1913, § 5841. It is elementary that the contract must be established by competent proof, or the transaction must be such as to give rise to a presumption that the debt was assumed, which, in some circumstances, may be sufficient in the absence of rebutting evidence. As is said in Moore v. Booker, 4 N. D. 543, 549, 62 N. W. 607. The contract by which a grantee assumes the payment of existing incumbrances is separate and distinct from the conveyance. "It may be, and often is, embodied in the deed; but it may be by separate writing, or it may rest entirely in parol." To this should be added that the intention to assume the mortgage may appear without a formal promise from a consideration of the entire instrument of transfer; or it may be implied from all the facts and circumstances. In either case, however, the intention or the agreement must exist and be proved, whether it appear in the deed, in a separate writing, rest entirely in parol, or be fairly and reasonably implied from the transaction. See also Leach v. Nelson, 50 N. D. 538, 196 N. W. 755.

A conveyance made subject to an existing and specified incumbrance does not alone obligate the grantee to pay the mortgage debt. Jones, Mortg. 7th ed. § 748. When equities of redemption are exchanged, subject to existing mortgages, no presumption arises that the grantee assumes or agrees to pay the mortgage debt, and ordinarily, he is not personally liable. Halvorson v. Mullin, 179 Iowa, 293, 156 N. W. 289, 161 N. W. 309; Andrews v. Robertson, 177 Cal. 434, 170 Pac. 1129; Peters v. Goodrich, 192 Iowa, 790, 185 N. W. 903; Jones, Mortg. 7th ed. § 738; 27 Cyc. 1340. We must, therefore, go outside the deed for evidence of a promise to pay the mortgage. Before the deed was executed, Leeak and McMillan came to an agreement as to the terms of the transfer and reduced it to writing. That instrument is carefully drawn, states in detail the terms of the contract, and describes existing liens on all the property involved. Indeed, this instrument characterizes the transaction as an exchange of properties. Not

only does the agreement fail to disclose an intention on the part of McMillan to assume and pay any part of the incumbrance on the Traill county land, but, by fair implication it excludes such an understanding on the part of either of the contracting parties. The agreement expressly stipulates that Leeak assumes and agrees to pay certain described mortgages upon the property in Missouri, given by McMillan in exchange for the Traill county land. There is not a syllable or a word in the entire contract suggesting an intention on the part of McMillan to assume the mortgage foreclosed in this action. The contract evidently expresses the entire agreement between the parties and the inference is clearly warranted, if not necessary, that the agreement was carefully worded in order to exclude the idea of an assumption of the Traill county mortgage by McMillan. From the fact that one party agreed to assume mortgages on property transferred to him, it is a legitimate inference that a similar provision with respect to the Traill county land was deliberately omitted because not agreed upon by the parties. Such omission, in view of the other terms of the contract, must be attributed to deliberate design rather than oversight. The contract provides "All payments other than mortgages assumed by second party are to be secured by mortgage or mortgages on said land being *exchanged* by first party. . . ." It thus appears from the instrument itself that the parties were *exchanging* properties or equities and the testimony of McMillan is all to that effect. The parties themselves gave the transaction the character of an exchange of properties, and, there being nothing in the circumstances or in the contract inconsistent therewith, it would not be proper for this court, by strained and technical construction, to give the transaction an entirely different character in order to fix liability for a deficiency, arising on the foreclosure of the mortgage, upon one of the transferees.

The consideration recited in the deed is one dollar and "other valuable consideration." An examination of the written agreement shows clearly that the real consideration was the equity in the Missouri property. See Bristol Sav. Bank v. Stiger, 86 Iowa, 344, 53 N. W. 265. The mere fact that the parties in their contract put a value upon the property—not on the equity ($85.00 per acre)—is not sufficient, in view of the undisputed evidence, to stamp the transaction as one of purchase and sale within the rule of the presumption stated in Mc-

Donald v. Finseth, supra. It does not appear that the amount of the mortgage was withheld as a part of the agreed consideration. The minds of the parties met on a proposition of exchange.

It was proper for McMillan to show the real contract between himself and Leeak as to the duty to pay the mortgage debt. McMillan's letters to plaintiff, subsequent to the transfer, do not, in our judgment, tend to show that he considered himself as personally obligated to pay the encumbrance. We have set out heretofore the material portions of this correspondence. It cannot be fairly said that the letters of Mc-Millan to Mrs. Brown, or any statements therein, are inconsistent with the theory, evidenced by the deed, the contract, and by McMillan's testimony, that he held the property subject to her mortgage, but without a personal undertaking on his part to pay the debt. The contract required appellant to pay interest on the mortgage from December 1, 1921; Leeak agreed to pay interest on the mortgage he assumed on the Missouri property from and after the same date. The agreement on the part of McMillan to pay interest, in the light of his evidence and the entire transaction, is consistent with his testimony that the mortgage was not assumed but that he intended to dispose of the equity when he could. Manifestly, the payment of interest by him might become necessary to avoid foreclosure and an extinguishment of whatever equity there might be in the property. See Old Alms-House Farm v. Smith, 52 Conn. 434.

The letters cannot, on any theory, constitute an original undertaking by McMillan to pay the mortgage. If such a construction could properly be put on the language of the letters, the contention must fail for the reason that the agreement would be without consideration. A promise to assume a mortgage, by the grantee of the premises, is enforcible upon the theory that the assumption of the debt constitutes a part of the consideration for the grant. It is clear, in the instant case, that the promise, if the letters can be construed as such, was not a part of the consideration; and of course, there was no new consideration. Frase v. Lee, 152 Mo. App. 562, 134 S. W. 10; Andrews v. Robertson, 177 Cal. 434, 170 Pac. 1129; Green v. Hall, 45 Neb. 89, 63 N. W. 119.

We are constrained to the conclusion that the findings of the trial court to the effect that McMillan assumed the mortgage, foreclosed in

this action, have no support in the evidence. Inasmuch as this holding necessitates a reversal, the other question raised by appellant need not be considered.

The deficiency judgment against McMillan is reversed, and the action against him must be dismissed. It is so ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE and NUESSLE, JJ., concur.