[File No. 6174.]

EDWIN B. MORRIS, Respondent, v. TREADWELL. TWICHELL et al. C. B. LITTLE, Appellant.

(249 N. W. 905.)

748

Opinion filed August 10, 1933.

*Zuger & Tillotson,* for appellant.

*Conmy, Young & Conmy,* for respondent.

BURR, J. Plaintiff commenced this action to foreclose a mortgage.

executed by the defendant Treadwell Twichell on the lands involved herein and in the complaint alleges the defendants claim interests in the land; but that these interests, if any, are subordinate to his.

The defendants answer admitting that Twichell gave the mortgage held by the plaintiff, but that the defendant Little is a holder, by subrogation, of a mortgage superior to that of the plaintiff. The defendant Little set forth this mortgage and asks for a decree of foreclosure of the same and for a judgment to the effect that his mortgage is superior to that of the plaintiff.

The trial court found in favor of the plaintiff and adjudged that the defendant Little had no right or interest under the mortgage which he claimed to be superior to the mortgage of the plaintiff.

From the judgment entered the defendant Little appeals demanding a new trial in this court.

An examination of the record shows:

In 1914 the owner of the real estate involved executed and delivered to the Travelers Insurance Company a mortgage to secure the payment of $20,000 which sum was due and payable in five years. This mortgage is known as the first mortgage.

In 1916 the owner of the land made a contract with the defendant Twichell giving to the latter an option to purchase the land by paying $10,000 in cash and executing a mortgage for the remainder of the purchase price "over and above existing incumbrances"—agreeing to give a deed upon such payment being made and mortgage given. The contract was recorded December 1, 1916.

Twichell had made arrangements with Little whereby the latter advanced to Twichell "the sum of $10,000 used by him in the purchase of said real estate."

The owner became incompetent and the county court appointed a guardian. In 1917 T. gave written notice of the exercise of his option to purchase the land "upon payment . . . of the sum of $10,000 . . . and my executing and delivering to him of a mortgage upon the said premises for the balance of such purchase price *over and above the amount of the existing* incumbrances thereon." Immediately thereafter T. filed in the county court a petition for conveyance of the real estate. A hearing was had and a decree entered directing the guardian to "make, execute and deliver to said Treadwell Twichell . . . a

good and sufficient conveyance . . . free from lien or incumbrance other than existing mortgages of record and of a mortgage to be executed and delivered by said Treadwell Twichell as in such contract provided; upon the payment by the said Treadwell Twichell . . . of the sum of $10,000 and the execution and delivery by him . . . of a mortgage *in terms as by said contract provided.*"

The first payment was made on the land, the mortgage now owned by the plaintiff and known as the second mortgage was executed "for the balance of the purchase price over and above existing incumbrances" and on January 24, 1918, was recorded. This deed recites that the owner of the land entered into a contract with T. whereby "he contracted and agreed to convey the premises . . . upon the performance of the conditions of said contract."

At the same time defendants entered into a written contract wherein it is stated that:

"Whereas C. B. Little, of Bismarck, North Dakota, advanced to the said Treadwell Twichell the sum of $10,000 used by him in the purchase of said real estate, and it is the purpose of the parties hereto that the said premises shall be owned by them jointly in undivided half interests, that the said Treadwell Twichell shall farm the same and that the said C. B. Little shall be repaid the one half of the sum so advanced by him with interest on all of the sum so advanced until such one half of said sum be repaid him."

"It is hereby agreed by and between the said Treadwell Twichell and the said C. B. Little, that the said C. B. Little is the owner of an undivided half interest in the said premises, subject to mortgage incumbrance thereon; and the said Treadwell Twichell hereby grants, bargains, sells and quit claims to the said C. B. Little, his heirs and assigns an undivided one half interest in the said premises hereinbefore described."

The contract further makes provision for the farming of the land by T. and how he shall be paid for his services out of the crops and how the remainder of the crop shall be sold and proceeds disposed of and the contract then says:

"The balance remaining from such one third share . . . shall be paid said C. B. Little, and credited as a payment upon such $10,000 advancement until the payments so made thereon aggregate the sum of

$5,000. That until such time as the payments so made as hereinbefore provided to the said C. B. Little shall aggregate the said sum of $5,000 and interest upon the full sum advanced by him, this agreement shall be and constitute a mortgage and lien upon the undivided one-half interest in the said premises of the said Treadwell Twichell, securing to the said C. B. Little, his heirs and assigns, the payment by said Treadwell Twichell, his heirs or assigns, of any part of the said sum of $5,000 remaining unpaid to him together with interest as hereinbefore provided. That upon the said C. B. Little being paid the said sum of $5,000 and interest as hereinbefore provided, either from crop proceeds or by said Twichell or his assigns in other manner, then the within mortgage shall be void and of no further force. . . ." This contract was recorded in February 1918.

By March 1919 a difference of opinion arose between T. and the holder of the second mortgage, as to the effect of the terms of the note, and at that time the note was altered and a provision inserted to the effect that the interest on the note was to be paid annually,—the note already providing for payment of annual installment of $1,000 on the principal.

In December 1919 the first mortgage became due and the defendants entered into a contract with the holder of this mortgage for an extension of time of payment for a period of five years. This extension agreement describes the Morris note and mortgage to the Insurance Company, describes T. and L. as owners of the land and it says:

"And whereas the parties of the first part are now the owners in fee-simple of said premises, subject to the above described mortgage, . . . and the said parties of the first part have agreed and do hereby agree to assume and pay said mortgage indebtedness, and whereas at the special instance and request of the said parties of the first part the time of the payment . . . has been extended . . . to the 1st day of December, 1924, now therefore, in consideration of said extension the parties of the first part do hereby covenant and agree with the party of the second part and assigns as follows: to pay the said principal note . . . and interest thereon . . . annually on the first day of December of each year" in accordance with five interest notes.

In August 1921 defendant T. gave a mortgage on this land to one M. T. Dill to secure the payment of $11,000. This mortgage, known

as the third mortgage, became the property of the defendant L. by assignment in August 1923.

In November 1921 the defendant T. gave to the defendant L. a mortgage upon this land—known as the fourth mortgage—to secure the payment of $10,000.

In November 1924 the first mortgage again became due, a new extension agreement, similar in terms to the first, was executed, and the time of payment extended to December 1929.

Defendant T. made annual payments upon the principal secured by the second mortgage now held by plaintiff up to and including November 1921 and continued paying the interest on the entire amount annually up to and including December 9, 1930.

In April 1927 L. foreclosed the fourth mortgage and a certificate of sale was issued to him, but no deed issued until November 20, 1929.

By December 1, 1929 the time secured by the second extension of the first mortgage expired and negotiations were open between L. and the holder of the first mortgage for a further extension of time. These negotiations were carried on with the Fargo agent of the insurance company. In this respect the defendant L. testified he told the agent that he was "willing to extend it at 5½ if they would accept that. If not, I would prefer to take the loan over myself, and if they would send me an assignment of the mortgage I would give them a draft for the amount and pay the Travelers Ins. Co." The agent, when asked if L. had asked for an assignment of the mortgage or whether an assignment was mentioned during the conversation, said "Not to my knowledge, no sir." And said he was as positive of this "as anybody can be three years afterwards." The company refused to grant an extension at five and a half per cent. interest and so on November 30, 1929, L. wrote to the agent saying:

"Herewith my draft for $20,235. Travelers Ins. Co. of Hartford to take up loan on Twichell farm. As stated over telephone I am willing to accept the loan for one year at five and one half per cent. if satisfactory to the Co."

Upon the receipt of this letter and check the papers were sent to L. with a satisfaction of the mortgage. The record shows L. was absent

from his office at the time of the receipt of this letter and that he did not see the instrument received until the spring of 1931, though it was among his papers; that he had no occasion to examine it and supposed an assignment had been received. In November of 1931, when consulting his counsel regarding the foreclosure of the mortgage, the papers were examined and then it was found to be a satisfaction; and so L. wrote to the company November 23, 1931 stating that:

"At the time of payment made to you a release of said mortgage was issued and forwarded to me and was filed by some one in my office without calling my attention to the instrument received. Release has not been recorded.

"Under the situation and naturally it was not a release of the mortgage I wanted and needed to protect myself, but an assignment of the mortgage.

"To correct the error will you please fill in from your records the amount due—execute same and return to me at your earliest convenience. . . ."

The Company declined to do so after this lapse of time.

Defendant L. claims that his contract with T. is one of security only, that though obligated to the holder of the first mortgage to pay off that mortgage, nevertheless, as against the second mortgage he is a purchaser of the mortgage, that he has refused to merge the interests and may maintain his right against the first mortgagee. He claims the second mortgagee is not injured thereby because he took his second mortgage subject to the first.

An analysis of the contract between the defendants shows quite clearly that, whatever may have been the purpose of T's getting an option on the land by the time L. advanced him the $10,000 for the initial payment it was their purpose to buy the land as a joint venture. The contract expressly states that it is the purpose of the parties "that the said premises shall be owned by them jointly in undivided half interests." The contract includes a quit claim of one half interest. It is true the contract also makes provision for a mortgage but it will be noted that this mortgage is on the half interest of T. to secure repayment of but one half of the initial payment. It is clear this mortgage provision would not have been inserted had T. furnished $5,000 of the initial payment himself and received the other $5,000 from L. In the

light of this contract this court must find that the contract between T. and L. constituted the latter an owner of an undivided half interest.

It may be true that installment payments on the note now held by the plaintiff were not in any way affected by L.'s obligations to the Insurance Company. The first extension agreement was made in November 1919 and installment payments were made regularly up to and including 1921. No installment payments were made thereafter and as L. did not pay off the first mortgage until 1929 it is clear the right to insist upon these installment payments was not waived by L's payment of the first mortgage.

But though it may be shown the second mortgagee did not change his position because of L's action this does not insure this right of subrogation.

The doctrine of subrogation proceeds upon the theory that he who invokes it has rightfully discharged a debt at the instance of and for the benefit of the debtor. Heegaard v. Kopka, 55 N. D. 77, 212 N. W. 440. Subrogation takes place only where one has performed the obligation of another, or has paid his own debt the burden of which has for a valuable consideration been assumed by another, or where he has paid incumbrances for the protection of his own title or interest, *the payment of which he has not assumed by contract.* Birke v. Abbott, 103 Ind. 1, 1 N. E. 485, 53 Am. Rep. 474; Buckner v. Buckner (Tex. Civ. App.) 51 S. W. (2d) 769, 771.

While the contract between the defendants does not contain a specific clause whereby L. accepted a quit claim deed subject to the existing incumbrances or where any portion of the incumbrances was deducted from the price he was to pay, nevertheless he did in a separate instrument assume the payment of this first mortgage.

One cannot, except under special circumstances, become an assignee of a claim against himself. The rule is that when payment had been made by one primarily liable, it operates as an absolute satisfaction. Henry & C. Co. v. Halter, 58 Neb. 685, 79 N. W. 616; Gulling v. Washoe County Bank, 24 Nev. 477, 56 Pac. 580. Neither by assignment nor by subrogation can he keep the mortgage alive as against other liens on the land. Winans v. Wilkie, 41 Mich. 264, 1 N. W. 1049; Fowler v. Fay, 62 Ill. 375; McCabe v. Swap, 14 Allen, 188; Converse v. Cook, 8 Vt. 164. It would be different if he were not

primarily liable. Capitol Nat. Bank v. Holmes, 43 Colo. 154, 95 Pac. 315, 127 Am. St. Rep. 108, 16 L.R.A. (N.S.) 470.

It is a settled rule that one, who assumes the payment of a mortgage as part of the purchase price, cannot by payment thereof assert rights thereunder as against a junior mortgagee. White v. Schader, 185 Cal. 606, 198 Pac. 19, 21 A.L.R. 499; Dodds v. Spring, 174 Cal. 412, 163 Pac. 351; Kuhn v. National Bank, 74 Kan. 456, 87 Pac. 551, 118 Am. St. Rep. 332; Oman v. Balfany, 161 Minn. 429, 201 N. W. 916; Paris v. Lawyers Title Ins. & T. Co. 206 N. Y. 637, 99 N. E. 83; Kerr v. Henderson (Tex. Civ. App.) 1 S. W. (2d) 1100; 3 Pom. Eq. Jur. § 1206 and annotations.

In either case the one who assumes the mortgage becomes primarily liable. The liability of defendant L. depends upon his own contract—the contract of the assumption of the debt—and not upon the liability of the mortgagor whose mortgage he assumed. Harvey v. Lowry, —— Ind. ——, 183 N. E. 309, 310. "Performance of an obligation for the delivery of money only is called payment" (Comp. Laws 1913, § 5798) and "full performance of an obligation by the party whose duty it is to perform it—extinguishes it" (Comp. Laws 1913, § 5793).

Counsel for appellant cites our statute, § 6718 of the Comp. Laws, dealing with subrogation, which says:

"One who has a lien inferior to another has a right; . . . to be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby;" and cites the cases of Norris v. German-American State Bank, 38 N. D. 276, 165 N. W. 570; Anderson v. Kain, 40 N. D. 632, 169 N. W. 501; Harth v. St. Paul Cattle Loan Co. 49 N. D. 467, 191 N. W. 615; and other cases in support of his contention. This statute and these decisions have no bearing upon the point involved here. All are based upon the principle that the holder of the inferior lien is not primarily liable for the debt which he has discharged. In all of the cases cited by defendant, such as Errett v. Wheeler, 109 Minn. 157, 123 N. W. 414, 26 L.R.A. (N.S.) 816; Murray v. O'Brien, 56 Wash. 361, 105 Pac. 840, 28 L.R.A. (N.S.) 998; and other cases the one given the right of subrogation had not assumed and agreed to pay the debt he had discharged. In the Minnesota case the owner of the land became

the holder of the mortgage and voluntarily satisfied it in ignorance of a junior claim.

Defendant insists he was not primarily liable on the mortgage held by the plaintiff and is therefore in position to claim subrogation. The defendant is not claiming subrogation under any rights obtained by him through payment of plaintiff's mortgage. He is asking to be subrogated to the rights of the first mortgagee.

Because of sheriff's deed on foreclosure of the fourth mortgage L. became the owner of the entire tract before he paid the first mortgage, and the mortgage he assumed was against the entire tract as is the mortgage owned by the plaintiff. The second mortgagee knew T. was bound to pay off the first mortgage as part of the purchase price and to protect him, thus making his mortgage first.

The tract of land involved contains 986 acres, more or less, and the purchase price paid by T. was $50 per acre. He paid $10,000 in cash, assumed the first mortgage on which $1,000 had been paid, assumed a mortgage to the Northern Trust Company for $1,000 on which $600 had been paid and gave a mortgage to the guardian to secure the payment of $20,050. The deed and the mortgage back for part of the purchase price were given on January 23, 1918. The next day the defendants entered into their contract.

The testimony shows that this contract contains all of the agreement between them. By the terms of this contract, already referred to, L. became an owner of an undivided half interest on the payment of $5,000, and nothing is said as to the total amount of purchase price he had to pay. But he was not required to make any further payment. The dealings between the defendants were the same as if each advanced $5,000 for the first payment and it must be clear that the existing incumbrances, including plaintiff's mortgage were deducted from the purchase price he was to pay. Hence when L. paid the mortgage he made a payment on the purchase price and would have had the right to contribution of one half from his co-owner, except that by this time he had become the owner of T's interest by sheriff's deed. Under the contract with T., L. took his half interest in the land "subject to mortgage incumbrance thereon." It is true there is no assumption of mortgage by L. in this contract, or any agreement on his part to pay the mortgage. Nevertheless it must be clear the amount of the mortgage was deducted

from the purchase price and hence when the mortgage was.paid it was a payment for the purchase of the land for it is difficult to believe that for $5,000 he was getting an undivided one half interest in 986 acres of land worth $50 per acre; and L. himself determined all relationships by assuming this indebtedness as his own and agreeing to discharge it.

The assumption of the mortgage and its payment operated as a payment of Little's own obligation, a satisfaction of the debt and a cancellation of the mortgage, leaving plaintiff's mortgage superior to the third mortgage now held by defendant Little.

The findings of the lower court are in accordance with the facts and the judgment therefore is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.