FIRST INTERSTATE BANK OF FARGO, N.A., a corporation, Plaintiff and Appellee,

v.

David REBARCHEK, Defendant and Appellant.

Civ. Nos. 930117, 930195.

Supreme Court of North Dakota.

Jan. 5, 1994.

Brad A. Sinclair, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee.

David A. Garaas, of Garaas Law Firm, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

David Rebarchek appealed from a summary judgment granting First Interstate Bank of Fargo [Bank] foreclosure of a mortgage. Rebarchek also appealed from an order denying his Rule 60(b), N.D.R.Civ.P., motion for relief from the foreclosure judgment. We affirm.

Rebarchek, Fred Tuominen and Richard Eveslage were shareholders in Retro Building Systems, Inc. [Retro], a construction company. They subsequently formed a partnership, Prairie Properties [Prairie], to own and manage commercial property. On January 2, 1987, Prairie borrowed $177,000 from the Bank and gave it a promissory note and a real estate mortgage covering the partnership property. The promissory note called for monthly payments of $2,125, commencing February 1, 1987, with the unpaid balance and interest due on January 1, 1992.

On February 7, 1989, the partnership borrowed another $30,000 from the Bank and gave it a promissory note and another mortgage covering the partnership property. This note was payable in 34 monthly installments of $810, with the unpaid balance and interest due on January 1, 1992.

Problems arose among Rebarchek, Tuominen and Eveslage, and on August 4, 1989, they executed a "Workout Agreement" with the Bank to allow them to reorganize their business relationships and to permit the Bank to restructure the indebtedness owed to it by Retro and Prairie. Article II of the workout agreement provided in part:

"... Prairie ... will be dissolved and each of the Partners will receive one-third of the partnership property. Each of the Partners will then convey their interest in the property formally owned by Prairie ... to Retro. Retro will then own all of the property formerly owned by Prairie.... Then Retro will redeem David Rebarchek's stock in Retro and in return Retro will convey all real estate owned by it which had formally been owned by Prairie ... to Rebarchek. All conveyances of the real property owned by Prairie Properties will be and will remain subject to the mortgage interests of [the Bank]. Nothing contained in this Agreement or the fact that [the Bank] consents to it is intended to or will amount to a waiver of any of [the Bank's] mortgage interests....

"At the same time Retro obtains ownership of Prairie['s] real property, Retro shall, and does hereby, assume all indebtedness due [the Bank] by Prairie ... and Retro shall be obligated to pay such indebtedness to [the Bank] as if Retro had been the initial borrower. Although repayment of the notes ... will not be affected by this Agreement except to the extent that those notes will memorialize indebtedness to be due [the Bank] by Retro, David Rebarchek shall pay the monthly payments required by the notes ... in the amounts of $2,125.00 per month and $810.00 per month respectively directly to [the Bank] for the months of June of 1989 and for each and every month thereafter up to and including the month of May of 1990.... Retro and the Guarantors acknowledge and agree that although the effect of the Plan will be that Retro will have assumed the obligation to pay Prairie['s] indebtedness to [the Bank] while, at the same time, conveying real property formally owned by Prairie ... to Rebarchek; Retro and David and Delores Rebarchek will have received consideration sufficient to allow [the] Bank's mortgages ... to remain valid as against David and Delores Rebarchek and their successors in interest if Retro fails to pay to [the Bank] the indebtedness Prairie ... owed [the Bank] because of the notes....

"If David Rebarchek fails to timely pay any payment(s) due [the Bank] because of the notes ... for the months of June 1989, and for each and every month thereafter up to and including the month of May of 1990, then Retro remains liable for paying those payments to [the Bank], but before [the Bank] calls on Retro to do so, [the Bank] shall make a good faith effort to collect those payments form (sic) the letter of credit or cash supplied by Mr. Rebarchek.

\* \* \* \* \* \*

"Retro will remain liable for paying all of ... Prairie['s] indebtedness once memo-

rialized by the notes ... to [the Bank]. [The Bank] waives none of its rights to proceed against any letters of credit or collateral pledge agreements given by David Rebarchek to ensure that he makes the payments to [the Bank] required by this Article II. After Retro assumes the indebtedness due [the Bank] from Prairie ... repayment of that indebtedness shall also be secured by all security interests Retro has given [the Bank]."

Retro conveyed the real estate to Rebarchek by a warranty deed, which stated that "[Retro] does hereby GRANT to [Rebarchek] all of the following real property ... subject to two mortgages of record to [the Bank], which mortgages [Rebarchek] assumes and agrees to pay according to its terms...."[1] Rebarchek, Tuominen and Eveslage also signed personal guaranties for the debt.

The parties executed another workout agreement on June 6, 1991, when the real estate taxes on the property were delinquent. According to Tuominen, Retro, which was leasing some of the property from Rebarchek, was responsible for payment of the real estate taxes under the terms of the lease agreement. The workout agreement provided in pertinent part:

"The notes attached to the August 4, 1989, Workout Agreement ... memorialize indebtedness which has been assumed by Retro and their repayment is secured by, among other things, mortgages held by [the Bank] in real property once owned by Prairie ..., a North Dakota partnership, but which real property is now owned by David and/or Delores Rebarchek....

\* \* \* \* \* \*

"To allow Retro to cure the defaults in the notes and mortgages attached to the August 4, 1989, Workout Agreement ... [the Bank] shall loan Retro $15,000.00 according to the terms and conditions of the promissory note attached.... When Retro signs the promissory note ... it shall also sign the setoff disclosure and disbursement request and authorization at-

tached.... Repayment of the $15,000.00 loan described in this Article II shall be secured by all of the security interests given by Retro to [the Bank] either before or at the time of this Agreement."

Rebarchek tendered all payments to the Bank pursuant to the January 2, 1987 promissory note and real estate mortgage until November 1991 when he was unable to make the payment because of a lack of cash flow from the real estate and exhaustion of his personal funds. Tuominen, Eveslage and Retro thereafter settled their obligations to the Bank and the Bank released them from "all its (sic) obligations in connection with" Retro, Prairie and Rebarchek. The Bank sued Rebarchek to foreclose the January 2, 1987 promissory note and real estate mortgage.

Rebarchek raises numerous arguments why summary judgment should not have been granted in this case. Summary judgment allows the disposal of a controversy if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Ebach v. Ralston*, 469 N.W.2d 801 (N.D. 1991). Applying these principles, we believe the trial court properly granted summary judgment for the Bank.

## I

Rebarchek contends the workout agreements show that the Bank never accepted him as the principal debtor, but looked to Retro as the principal debtor on the promissory note. Rebarchek asserts that he was nothing more than a surety for the debt. Thus, according to Rebarchek, he was discharged from any obligation to pay the promissory note when the Bank released Tuominen, Eveslage and Retro. We reject these contentions.

---

1. Rebarchek acknowledges that the terms of this warranty deed were presented to the trial court in the form of an entry in an abstract of title which the Bank was allowed to withdraw as an exhibit prior to the appeal. Rebarchek does not argue that we cannot consider the terms of the deed because the abstract of title is not part of the record on appeal.

## A

A surety is defined as "one who, at the request of another and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor." Section 22–03–01, N.D.C.C. The South Dakota Supreme Court has explained:

"Suretyship is a contractual relationship, which results from two persons becoming obligated to the same creditor with one of them bearing the ultimate liability. In other words, if the debt is enforced against the surety, he then is entitled to be indemnified by the one who should have paid the debt before the surety was compelled to do so. However, 'one who receives and retains the consideration or benefit of a contract cannot occupy the position of surety.' 74 Am.Jur.2d *Suretyship* § 3 (1974). Hence, a person who makes a contract for the purpose of securing to himself a benefit rather than for securing to another a benefit, may be classified as a principal. *Heinrich v. Magee*, 52 S.D. 371, 217 N.W. 631 (1928).

"It is immaterial in what form the relation of principal and surety is established, or whether the creditor was or was not contracted with in that relation. The relation is vested by the arrangement and equities between the debtors, and may or may not be known to the creditor....
". . . .
" '[Suretyship] is determined by inquiring who received the consideration of the contract, or who, according to the arrangements between the parties, ought to pay the debt.'
"*Heinrich*, 52 S.D. at 378, 217 N.W. at 634 (citations omitted); 72 C.J.S. *Principal & Surety*, §§ 4, 9 (1987)."

*State of Wis. Inv. Bd. v. Hurst*, 410 N.W.2d 560, 562–563 (S.D.1987).

■ Although a conveyance made subject to an existing and specified incumbrance does not alone obligate the grantee to pay the mortgage debt, *Brown v. Leeak*, 52 N.D. 398, 203 N.W. 185 (1925), a grantee who assumes a mortgage debt becomes primarily liable for the debt, *Dakota Bank and Trust v. Funfar*, 443 N.W.2d 289 (N.D.1989); *Morris v. Twichell*, 63 N.D. 747, 249 N.W. 905 (1933). Under these circumstances, the assuming grantee, if the original mortgagee assents to the arrangement, becomes the principal, the grantor becomes a surety, and the grantee, upon default, is subject to foreclosure of the property. *Leach v. Nelson*, 48 N.D. 1046, 189 N.W. 251 (1922). *See also Ruther v. Thomas*, 43 Colo.App. 435, 604 P.2d 703 (1979); *Prudential Savings and Loan Ass'n v. Nadler*, 37 Ill.App.3d 168, 345 N.E.2d 782 (1976); *First Federal S. & L. Ass'n of Gary v. Arena*, 406 N.E.2d 1279 (Ind.Ct.App.1980). As the court noted in *Dorothy Edwards Realtors, Inc. v. McAdams*, 525 N.E.2d 1248 (Ind.Ct.App.1988):

" 'Mortgagors commonly transfer real estate "subject" to an existing mortgage. This language goes beyond its apparent meaning that the land in the hands of the transferee can be reached by the mortgagee on default in priority to any right of the former in it. This is always true regardless of any agreement by the parties. What it means in this connection is that the transferee agrees, as between him and his transferor, that the debt is to be satisfied out of the land. Or, as it is frequently put, the land is the principal and the transferor is only in the position of a surety or one secondarily liable.' "

[Quoting G. Osborne, G. Nelson & D. Whitman, *Real Estate Finance Law* § 5.3 at 251 (2d ed. 1979) ]. *See also Coleman v. Beck*, 142 Neb. 13, 5 N.W.2d 104 (1942).

■ Here, under the terms of the warranty deed from Retro, Rebarchek "assume[d] and agree[d] to pay" the mortgage. He received and made use of the property. Rebarchek therefore became the principal obligor and Retro a surety, the party secondarily liable. The workout agreements did not change this relationship between the parties. The first workout agreement specifically recognized Rebarchek's primary obligation to make payments under the promissory note and Retro's secondary liability if Rebarchek failed to do so. Although the workout agreement speaks of payments only through May 1990, Tuominen testified in his deposition

that Rebarchek was the person responsible for making the payments after May 1990.[2] Rebarchek has not directed our attention to, nor have we found, any evidence he presented to directly contradict Tuominen's testimony or to otherwise explain who was liable for making the payments after May 1990. *See Weiss, Wright, Paulson & Merrick v. Stedman,* 507 N.W.2d 901 (N.D.1993). The undisputed facts show that Rebarchek continued to make all payments until he defaulted in November 1991. When read against this background, the wording in the agreements about Retro's assumption of indebtedness and liability for debts is consistent with Retro having only secondary liability as a surety. The documents do not evidence that the Bank refused to accept Rebarchek as the principal debtor.

Viewing the evidence presented to the trial court in the light most favorable to Rebarchek, we believe no reasonable person could conclude that Rebarchek was a surety under these circumstances. *See Rykowsky v. Dickinson Public School,* 508 N.W.2d 348 (N.D. 1993). We conclude that, as a matter of law, Rebarchek was the principal debtor and Retro was a surety for the debt.

### B

■ Rebarchek contends that he was discharged from any liability on the note and mortgage by the Bank's written settlement and release with Retro, Tuominen and Eveslage. We disagree.

Rebarchek relies on § 41–03–68(3)(b), N.D.C.C. [U.C.C. § 3–601], which provides:

"3. The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument:

\* \* \* \* \* \*

"b. Is discharged under any provision of this chapter, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (section 41–03–73)."

Section 41–03–72(1)(b), N.D.C.C. [U.C.C. § 3–605], further provides:

"1. The holder of an instrument may even without consideration discharge any party:

\* \* \* \* \* \*

"b. By renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

Rebarchek contends that the Bank, through the written release, renounced its rights against Retro, Tuominen and Eveslage and that this renunciation discharged Rebarchek from liability on the promissory note.

The problem with Rebarchek's argument is that he, and not Retro, was the principal debtor. Retro, as a surety for the debt, was not a "party who has himself no right of action or recourse on the instrument" under § 41–03–68(3). Retro, if it had satisfied the principal's obligation, would have a "right of action" against the principal, Rebarchek, or any cosureties. Sections 22–03–10 and 22–03–11, N.D.C.C.

■ A renunciation of rights against a principal debtor normally discharges a surety. *See* Sections 22–03–06 and 22–01–15, N.D.C.C.; *Tri–Continental Leasing Corp. v. Gunter,* 472 N.W.2d 437 (N.D.1991); *Beneficial Financial Co. of Jamestown v. Lawrence,* 301 N.W.2d 114 (N.D.1980); *Oak Brook Bank v. Hawthorne Bank of Wheaton,* 90 Ill.App.3d 642, 46 Ill.Dec. 51, 413 N.E.2d 491 (1980); *MGIC Financial Corp. v. H.A. Briggs Co.,* 24 Wash.App. 1, 600 P.2d 573 (1979). However, a renunciation of rights against or discharge of a surety does not discharge the principal debtor. *See Oak Brook Bank; Merrill v. Prebilt Co.,* 329 Mass. 166, 107 N.E.2d 438 (1952); *Coleman.* Rebarchek's obligation was not discharged by the Bank's settlement and release of Retro and the two former partners, who were sureties.[3]

---

2. Although Rebarchek apparently would not be personally responsible to make the payments after May 1990, the Bank retained its right to foreclose its lien on the property deeded from Retro to Rebarchek if he did not do so. That, of course, is exactly what transpired in this case.

3. Because Rebarchek was the principal debtor rather than a surety, Rebarchek's further reli-

The trial court correctly concluded that Rebarchek was not discharged of liability on the promissory note and mortgage in this case.

## II

■ Rebarchek contends that the Bank's notice before foreclosure was defective and the foreclosure judgment is void because the mortgage maturity was 15 years rather than five years and because the Bank erroneously accelerated the entire amount due. The January 2, 1987 promissory note called for 60 monthly payments of $2,125 with the unpaid balance and interest due on January 1, 1992. However, the real estate mortgage contained the following payment terms:

"One hundred seventy-seven thousand and no/100—Dollars and interest according to the conditions of one note ___ of even date herewith, as follows, 60 installments of $2125.00 starting February 1, 1987 and continuing until January 1, 1992. * The interest rate will be variable at 1% OVER [the] Bank ... reference rate which is presently 11%. This will fluctuate. The payment may change as the rate changes to insure a 15 year amortization.

see attached ** "

The attachment states:

"On January 1, 1992 the rate of interest shall be adjusted to a rate equal to 1% in excess of the [Bank's] reference rate. Semi-annually, installments shall be adjusted to reflect the change in interest while continuing to maintain a 15 year amortization rate. Said payments shall continue to be made on the first of each month thereafter at the adjusted amount through January 1st, 1997.

"January 1st, 1997 the interest rate shall again be adjusted to a rate equal to 1% in excess of the [Bank's] reference rate. Semi-annually, installments shall be adjusted to reflect the change in interest while continuing to maintain a 15 year amortization rate. Said payments shall

continue to be made on the first of each month thereafter at the adjusted amount through January 1st, 2002, at which time the entire unpaid principal and interest balance shall be due and payable in full."

Rebarchek contends that the mortgage calls for a 15–year term with a balloon payment not finally due until 2002 and, because this is a mortgage foreclosure proceeding, the mortgage should control. According to the Bank, the mortgage reference to post–1992 interest rates was the Bank's indication of the maximum interest rate it would charge if the mortgage and note were renewed at that time.

■ Generally, the provisions of a promissory note and a mortgage given to secure payment of the note must be construed together whenever possible. *See Lakeland Realty Co. of Minnesota v. Reese*, 77 N.D. 904, 46 N.W.2d 696 (1951); *Interstate Finance Corporation v. Brink*, 232 Iowa 733, 6 N.W.2d 120 (1942). However, when there is an irreconcilable conflict between the terms of the note and mortgage as to maturity, the terms of the note must prevail because the note is the principal obligation and the mortgage only incidental to it. *Brown v. The First National Bank of Montgomery*, 261 Ala. 565, 75 So.2d 141 (1954); *Moss v. McDonald*, 772 P.2d 626 (Colo.Ct.App.1988); *Brink*; *A–1 Finance Company v. Nelson*, 165 Neb. 296, 85 N.W.2d 687 (1957); *Harmon v. Bank of Danville*, 287 S.C. 449, 339 S.E.2d 150 (Ct.App.1985).

Rebarchek asserts that we applied the opposite rule in *Northwestern Fed. Sav., Etc. v. Ternes*, 315 N.W.2d 296 (N.D.1982). In *Ternes*, the mortgage contained a due on sale clause but the promissory note did not. The appellants argued that the promissory note should control in that situation. We disagreed:

"We believe the promissory note and mortgage are inter-related documents and the conditions of mortgage, out of necessi-

ance on § 41–03–73, N.D.C.C. [U.C.C. § 3–606], is misplaced. *See Matthews v. Saleen*, 812 P.2d 1186 (Colo.Ct.App.1991) [U.C.C. § 3–606 discharges a surety if a creditor discharges the principal obligor without reserving its rights against the surety or without obtaining the sure-

ty's consent to remain liable]. Rebarchek has pointed to no evidence of a physical alteration of any negotiable instrument, so § 41–03–44(2)(a), N.D.C.C. [U.C.C. § 3–407], is also inapplicable. *See Sargent County Bank v. Wentworth*, 500 N.W.2d 862 (N.D.1993).

ty, relate to the entire transaction unless it can be established through competent evidence that one or the other is to be treated separately. Even if such were possible, the mortgage is given for security and a promise to pay the promissory note and the conditions set forth therein would prevail as to the security given even though the same conditions are not recited in the promissory note. Any other approach would bring about absurd results which the law does not favor."

*Ternes,* 315 N.W.2d at 302. *Ternes* is consistent with the previously mentioned principles of construction. In *Ternes* there was no irreconcilable conflict between the terms of the promissory note and mortgage. The note and mortgage in *Ternes* could be interpreted together to include a due on sale clause because the note was silent on the subject.[4]

Here, the promissory note clearly calls for a five-year maturity due on January 1, 1992. If we assume Rebarchek is correct that the mortgage calls for a 15–year maturity due January 1, 2002, no genuine issue of fact arises because an irreconcilable conflict exists and the terms of the promissory note control as a matter of law. *See Brown; Moss; Brink; Nelson; Harmon.* Accordingly, we conclude that the Bank's notice before foreclosure was not defective and the foreclosure judgment is not void.

### III

■ Rebarchek contends that the Bank committed race discrimination in violation of § 14–02.4–13, N.D.C.C., and, as a result, it should be estopped under § 14–02.4–20, N.D.C.C., from proceeding with the mortgage foreclosure. Rebarchek, who was married to a Native American, asserts that the Bank's refusal to give him a loan application in December 1991, when he was trying to work out a restructuring of the debt, was based on his wife's race. The Bank asserted that denying Rebarchek a loan application was not motivated by his wife's race, but was

a business decision premised on the prior late payment history, the inability of the real estate to cash flow, and Rebarchek's refusal to give the Bank a written list of renters and other information.

Section 14–02.4–13, N.D.C.C., provides in part:

"*14–02.4–13. Discriminatory housing practice by financial institution or lender.* It is a discriminatory practice for a person, or agent or employee of the person, who lends or provides other financial assistance for the purchase ... of real property to discriminate in lending or financial assistance decisions, or in the extension of services in connection therewith, based on the race ... or status with respect to marriage ... of the person seeking the loan or financial assistance."

In *Hillesland v. Federal Land Bank Ass'n,* 407 N.W.2d 206 (N.D.1987), we upheld summary judgment dismissal of an age discrimination claim under Chapter 14–02.4, N.D.C.C., in the context of a job termination, where the plaintiff's case rested solely on his allegation that he was replaced by a younger man. We quoted the trial court's observations that the plaintiff offered no proof of any age-conscious statements, writings, or policies by the employer, no statistical evidence of the employer's past actions, and no pattern of adverse treatment of older similarly situated employees.

Rebarchek has offered no more to support his claim than did the plaintiff in *Hillesland.* Rebarchek's evidence of race discrimination consists solely of the fact that he was married to a Native American at the time he sought, and was denied, the loan application. We agree with the trial court that Rebarchek has failed to present a prima facie case of, or raise a genuine issue of material fact on, race discrimination. The trial court did not err in granting summary judgment on the race discrimination claim.

---

4. We recognized a limited exception to this rule in *Johnson v. King,* 325 N.W.2d 254 (N.D.1982). In *King* we said that where a promissory note did not contain an acceleration clause but the related mortgage did, the acceleration clause in the mortgage could be invoked only in an action where a foreclosure was sought and not in an action to obtain a money judgment on the promissory note. *King* differs from this case, because the Bank seeks foreclosure of the mortgage.

## IV

 Rebarchek asserts that he is entitled to relief under the marshalling provisions of § 35–01–15, N.D.C.C. According to Rebarchek, this statute required the Bank to look first to other security to satisfy the debt, but the Bank released other security through its written settlement agreement with Retro, Tuominen and Eveslage. Rebarchek's argument is without merit.

 The marshalling statute codifies the long-recognized equitable duty owed by a senior lienholder to a junior lienholder. *Matter of Estate of Hansen,* 458 N.W.2d 264 (N.D.1990). It is undisputed that there are no inferior liens of record on the real estate at issue. Rebarchek's bald assertion that his construction company is entitled to enforce a mechanic's lien on the property sometime in the future is insufficient to raise a genuine issue of material fact. Section 35–01–15 is inapplicable under the circumstances. The trial court did not err in granting summary judgment on this claim.

## V

 Rebarchek contends that the trial court erred in refusing to allow him to amend his answer to assert additional defenses. A decision on a motion to amend a pleading under Rule 15(a), N.D.R.Civ.P., is within the sound discretion of the trial court and will not be overturned on appeal in the absence of an abuse of discretion by the trial court. *Hansen v. First American Bank & Trust,* 452 N.W.2d 770 (N.D.1990); *First Trust Co. v. Scheels Hardware,* 429 N.W.2d 5 (N.D. 1988). We find no abuse of discretion here.

 Rebarchek's proposed amended answer contained assertions that Rebarchek was a surety for the debt and that the release of Retro discharged his obligation. The trial court denied the motion to amend the answer, but, nevertheless, ruled against Rebarchek on the merits of these defenses. We have upheld the trial court's rulings on these issues. A trial court does not abuse its discretion by denying a requested amendment that would be futile. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933

F.2d 314 (5th Cir.1991); *Jackson v. Bank of Hawaii,* 902 F.2d 1385 (9th Cir.1990).

Rebarchek also sought to amend the answer to assert that the Bank had "been paid by Retro ... on the note." The trial court ruled that "[i]t is undisputed that the January 2, 1987, Promissory Note and Real Estate Mortgage remain unpaid [and] unsatisfied...." We agree that Rebarchek has failed to raise a genuine issue of material fact to dispute lack of payment. The trial court did not abuse its discretion in refusing to allow Rebarchek to amend his answer.

## VI

Rebarchek contends that the trial court abused its discretion in denying his Rule 60(b), N.D.R.Civ.P., motion for relief from the judgment. Rebarchek acknowledges that the motion was "merely cumulative of what was before the trial court before it entered summary judgment," but he asserts that he submitted additional documents to support those arguments. The trial court was not persuaded by these additional documents to vacate the summary judgment. We have considered these documents in our rulings upholding the summary judgment dismissal. The trial court did not abuse its discretion in refusing to grant Rule 60(b), N.D.R.Civ.P., relief.

We are unpersuaded that other arguments raised by Rebarchek require reversal.

The summary judgment and order denying relief from that judgment are affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.