G. L. HEEGAARD and James D. Brown, Trustees, and First Loan &
Securities Company, a Corporation, Appellants, v. W. F. KOPKA
et al. PETER E. NORDAHL, Respondent.

(212 N. W. 440.)

**Mortgages — person paying first mortgage not an assignee of same.**

1. Plaintiffs loaned money to the defendant Kopka. They took as security a
third mortgage on his real estate with the understanding that the first and
second mortgages thereon should be discharged either from the proceeds of the
loan or by Kopka from other sources. Plaintiffs paid the first mortgage,
debt and charge the payment against Kopka on account of the loan. The loan
was insufficient to pay the second mortgage indebtedness and Kopka failed to
pay it from other sources. Plaintiffs brought this action to foreclose the first
mortgage, claiming as assignees or subrogees. *Held*, for reasons stated in the
opinion, that the plaintiffs paid and discharged the first mortgage debt and
were not assignees thereof.

**Subrogation — doctrine defined — who may invoke.**

2. The doctrine of subrogation is purely equitable. It was conceived of a
desire to attain substantial justice. It proceeds upon the theory that he who
invokes it has rightfully discharged a debt at the instance and for the benefit
of the debtor and may be substituted in the place of the creditor who was thus
paid. But the doctrine is always subject to the provision that it will not be
applied where he who claims its benefits was a volunteer, a stranger, or an
intermeddler, or where its application will result in an injustice to another.
*Held*, for reasons stated in the opinion, that the plaintiffs are not entitled to
the right of subrogation to the first mortgage debt as against the defendant,
the second mortgagee.

Opinion filed February 14, 1927.

Mortgages, 41 C. J. § 655 p. 663 n. 33. Subrogation, 37 Cyc. p. 363 n. 1; p.
364 n. 2; p. 365 n. 4; p. 372 n. 39; p. 376 n. 67; p. 475 n. 10, 11.

Appeal from the District Court of Dunn County, *Pugh,* J.
Affirmed.
*Sullivan, Hanley & Sullivan,* for appellants.

Annotation.—Doctrine of subrogation defined, 25 R. C. L. 1313; 3 R. C. L. Supp.
1451; 5 R. C. L. Supp. 1371.

"Equity does not admit the doctrine of equitable assignment in favor of every person who pays off a mortgage; such relations must exist towards the mortgaged premises, or with other parties, that the payment is not a purely voluntary act, but is an equitably necessary or proper means of securing the interests of the one making it from possible loss or injury. The payment must be made by or on behalf of a person who had some interest in the premises or some claim against other parties which he is entitled in equity to have protected and secured." Kalscheuer v. Upton, 43 N. W. 816.

"A party who advances money to another that is used to discharge a valid pre-existing lien on real estate, if not a mere volunteer, is entitled to subrogation to all the remedies which the original lien holder possessed as against the property." 37 Cyc. 474; Baker v. Baker, 49 N .W. 1064; Edwards v. Davenport, 20 Fed. 756.

An implied understanding between the plaintiff and the debtor that they are to be subrogated is sufficient. Wilkins v. Gibson, 84 Am. St. Rep. 204.

*T. F. Murtha* and *H. L. Malloy,* for respondents.

"Subrogation, being purely an equitable right, is limited only by equitable considerations, and it is not, therefore, available or enforceable where there are subsisting and countervailing equities, and the equities being the law will prevail. 37 Cyc. 381.

"One who pays a debt secured by a mortgage for the express purpose of discharging the lien cannot be subrogated to the rights thereunder; . . . and one who, by paying a mortgage, only does that which he is bound to do, cannot claim to be subrogated to the rights of the mortgagee." 37 Cyc. 382.

Subrogation cannot be raised for the first time in the supreme court. 3 C. J. 695; Atchison, T. & S. F. R. Co. v. Kansas Farmers' Ins. Co. (Kan.) 53 Pac. 607; Gregg v. Fox (Mich.) 76 N. W. 66.

NUESSLE, J. This action was brought to foreclose three mortgages executed by the defendant Kopka, one for $1,800, one for $10,000, and a third for $1,000. This last was a commission mortgage, being commission on the $10,000 mortgage. Defendant Nordahl asserted title to a portion of the real estate involved under a sheriff's deed issued pursuant to foreclosure of a mortgage which he claimed was superior

to the mortgages of the plaintiffs. The trial court adjudged a foreclosure of the plaintiff's mortgages, but held that the rights of the defendant Nordahl in the premises in question were superior to those of the plaintiff with respect thereto, and quieted title in the defendant. Judgment was entered accordingly. The appeal is from such a judgment. Plaintiffs ask for a trial de novo in this court.

It appears that in 1917 the defendant Kopka owned some 1,400 acres of real estate in Dunn county. On a half section of this real estate he had given a mortgage for $1,800, which was then owned by one Head. In January, 1918, he gave a second mortgage on this half section to the defendant Nordahl to secure a loan of $2,000. He told Nordahl this obligation or the first mortgage would be paid before the fall of 1918 as he was going to make a new loan and would then take it up. The note to Nordahl was made payable December 1, 1918. Thereafter, and in 1918, he arranged with the plaintiffs to float a bond issue for $10,000 on all of the land, including the half section mortgaged to Nordahl, and pursuant thereto Kopka on November 21, 1918, executed the mortgage for $10,000 and the commission mortgage for $1,000. According to Kopka's testimony, under this arrangement the plaintiffs were to use the proceeds of the bond issue in paying off all the various liens and claims against the land in question. According to the testimony of Jacobs the secretary of the plaintiff company, Kopka was to discharge the Nordahl claim himself from other sources. In any event the matter of the bond issue proceeded; the plaintiffs paid all of the claims excepting the Nordahl mortgage. They did not, however, take a satisfaction of the Head mortgage, or if they did, did not put it of record. Kopka's account in their books was credited with the amount of the bond issue, $10,000, and charged with their various disbursements in his behalf including the payment of the Head mortgage which was made in November, 1918. In 1920 they rendered a statement to Kopka showing that the Head mortgage was paid. In this statement Kopka was charged with a cash commission of $400, and it appeared that a balance of $154.27 remained due him. In 1919, Jacobs saw Nordahl and told him that he need not worry about his mortgage as the Head mortgage was paid. Nordahl, however, foreclosed his mortgage in April, 1920, and bid the mortgaged premises in at foreclosure sale for the full amount of the mortgage debt and costs, aggregating

about $2,400. This was as much as the property was worth. No redemption was made from this sale and sheriff's deed issued to Nordahl. In June, 1921, the plaintiffs procured an assignment of the Head mortgage to themselves. So far as appears from the record, at the time that the mortgages in question were given, Kopka was a man of some property and solvent. This likewise appears to have been the case at the time of the foreclosure of the Nordahl mortgage. Kopka made no payments of principal or interest, and in November, 1921, the plaintiffs began the instant action to foreclose the $10,000 mortgage given to secure the bond issue, the $1,000 commission mortgage, and the Head mortgage, claiming the Head mortgage as assignees. The trial court held that the Head mortgage had been paid and that Nordahl was the owner under his sheriff's deed of the land on which he had had his mortgage, and that he was entitled to have title thereto quieted in him as against the plaintiffs. Judgment was entered accordingly and from this judgment the plaintiffs now appeal.

The plaintiffs contend that under the terms of their agreement with Kopka they were to have a first mortgage on all of the land including that mortgaged to Nordahl; that the Nordahl mortgage was to be discharged by Kopka with money other than that derived from the bond issue; that this agreement with Kopka contemplated that the proceeds of the bond issue should be used in paying off all of the superior lien claims against the land in question excepting the Nordahl claim; that pursuant to this agreement they paid the Head mortgage and took an assignment of the same to themselves. On the other hand the defendant Nordahl contends that the Head claim was intended to be paid and discharged by the plaintiffs and was in fact so paid and discharged; that the taking of the assignment from Head was an afterthought; that such payment of the Head claim was pursuant to the agreement with Kopka and was made either because the plaintiffs believed that the proceeds of the bond issue would be sufficient to discharge Nordahl's claim as well, or in reliance upon the assurance of Kopka that he would discharge the same with money obtained from other sources than the bond issue.

The trial court found that the plaintiffs paid and satisfied and intended to pay and satisfy the Head claim. A careful investigation of the record inclines us to the opinion that this finding is well sustained

by the evidence. Head was paid in November, 1918. Kopka was credited on plaintiff's books with the full amount of the bond issue; he was charged with the amount required to pay the Head claim as of the date of such payment. It is true that there is no satisfaction of record, and the plaintiffs deny that one was taken from Head. Yet, they procured no assignment until in June, 1921, just before they took the initial steps in the direction of their foreclosure action. Whether this payment of the Head claim was in the expectation that the proceeds of the bond issue would be sufficient to pay the Nordahl claim as well, or in reliance upon Kopka's assurance that he would take care of the mortgage, is here immaterial. The fact is that Head was paid and Kopka was charged with the amount of the payment and no assignment was taken to the plaintiffs.

The next question that presents itself is whether the Head claim having been paid the plaintiffs under these circumstances may claim as subrogees to or equitable assignees of it. The plaintiffs insist that they were not parties to any agreement with Nordahl; that all that was done by them was pursuant to their agreement with Kopka that pre-existing liens should be paid and that the $10,000 mortgage should be a first lien upon all of the real property covered by it; that Nordahl was not in any sense a party to any arrangement with plaintiffs or between plaintiffs and Kopka, and will be in no worse position than he occupied before the Head claim was paid though they be adjudged assignees or subrogees under the Head claim; that justice requires that they be subrogated to the rights of Head; that such subrogation will not injure Nordahl who will have as good security as he had at the time he took his mortgage. As against these contentions defendant urges that plaintiffs are not entitled to any right of subrogation; that though in the first instance they might have asserted such right, yet they may not now since its assertion would result in an injustice to the defendant who has acted to his detriment in reliance upon the acts and conduct of the plaintiffs.

The doctrine of subrogation is purely equitable. It was conceived of a desire to attain substantial justice. It proceeds upon the theory that he who invokes it has rightfully discharged a debt at the instance and for the benefit of the debtor and may be substituted in the place of the creditor who was thus paid. But this doctrine is always subject to

the provision that it will not be applied where he who claims its benefit was a volunteer, a stranger, or an intermeddler, or where its application will result in an injustice to another.   See Northwestern Mut. Sav. & Loan Asso. v. White, 31 N. D. 348, 153 N. W. 972; Bank of Ipswich v. Brock, 13 S. D. 409, 83 N. W. 436; Emmert v. Thompson, 49 Minn. 386, 32 Am. St. Rep. 566, 52 N. W. 31; Pom. Eq. Jur. § 1212, and cases cited.   Though it be conceded that in the instant case the plaintiffs might properly have claimed the right of subrogation at the time of the payment of the Head mortgage, nevertheless, their subsequent conduct in the matter was such as to defeat this claim as against Nordahl.   Nordahl knew, it is true, of the Head mortgage at the time he took his mortgage, but he was assured then by Kopka that either his obligation or Head's would be paid out of the proceeds of a loan which Kopka intended to make.   Plaintiffs at the time they paid the Head mortgage had actual knowledge of the Nordahl mortgage.   They paid either because they believed Kopka would take up the Nordahl mortgage, or that they would be able to do so out of the proceeds of the bond issue.   Which belief actuated the payment is here immaterial. This payment was made in November, 1918.   Nordahl's claim was due on December 1st, 1918.   It was not paid.   Nordahl was concerned. Jacobs, the plaintiffs' secretary, told him that he need not be for his mortgage was first.   In 1920 Nordahl began foreclosure proceedings. In the meantime the transaction between Kopka and plaintiffs had not been concluded.   The plaintiffs had learned that the proceeds of the bond issue were not sufficient to enable them to discharge the Nordahl claim.   They likewise knew that Kopka had not done so.   Yet, they neither procured an assignment from Head nor did they attempt in any other manner to assert any rights growing out of the payment of the Head obligation.   So Nordahl proceeded with his foreclosure.  The land was worth no more than the amount of his claim.   Believing that the Head mortgage had been satisfied he bid the property in for the full amount of the mortgage debt, thereby discharging Kopka.   So far as appears from the record Kopka was then solvent.  Thus it appears that the plaintiffs failed to assert the right which they now claim until after Nordahl had acted to his detriment by selling the property at foreclosure sale and bidding it in for the full amount of his claim.   Had the plaintiffs acted promptly Nordahl would have been apprised of the

true facts in the matter and would then have been able to protect himself. Not only did the plaintiffs fail to act, but they assured Nordahl that his mortgage was first. This was consistent with what Kopka had told him would come to pass at the time he made the loan to Kopka. As a matter of fact it was first since the Head mortgage had been paid. It is true that Head's mortgage was not satisfied of record and Nordahl had constructive notice of this fact, but he relied upon the representations of the plaintiffs and upon all of the circumstances as actually known to him. Under these facts the plaintiffs are not in a position to assert a right of subrogation to the Head claim. By their acts and conduct the defendant was induced and permitted to act to his detriment. The plaintiffs cannot now invoke an equitable remedy invented to attain justice which will result in an injustice for which they themselves are responsible.

The judgment of the District Court must therefore be affirmed.

BIRDZELL, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.